LEE, Respondent, v. STATE BOARD OF DENTAL EXAMINERS, Appellant.

*November 30, 1965—January 4, 1966.*

[4] Id. at page 415.

The cause was submitted for the appellant on the briefs of *Bronson C. La Follette,* attorney general, and *Warren H. Resh,* assistant attorney general, and for the respondent on the brief of *Peter P. Woboril, Jr.,* attorney, and *Werner J. Trimborn,* special counsel, both of Milwaukee.

HALLOWS, J.   This appeal involves only that part of the court's order which held the conviction under 21 U. S. Code, sec. 331 (a), was not of a crime involving moral turpitude within the meaning of sec. 152.07 (2), Stats. The board agrees the matter should go back for further proceeding on the second ground.

Under sec. 152.07 (2), Stats., the conviction of a crime involving moral turpitude empowers the board to revoke a dentist's license to practice and the record of the conviction is conclusive evidence.   It is argued by Lee that

his conviction under 21 U. S. Code, secs. 331 (a) and 352 (a),[2] cannot be considered a conviction in this revocation proceeding because the conviction is based upon a plea of *nolo contendere*. The view that a conviction based on a plea of *nolo contendere* is clothed with the same attributes as the plea is a minority view which this court has not followed. The essential characteristic of a plea of *nolo contendere* is that it cannot be used collaterally as an admission. Such a plea is not a plea of right and may be refused by a court, sec. 957.25; but when accepted by the court it constitutes an implied confession of guilt for the purposes of the case to support a judgment of conviction and in that respect is equivalent to a plea of guilty. *State v. Suick* (1928), 195 Wis. 175, 217 N. W. 743. But the plea of *nolo contendere* differs from a plea of guilty in its collateral effects. Because a plea of guilty is an unqualified express admission by the defendant it may be used against him in a collateral or subsequent civil action; but a plea of *nolo contendere* is not such an admission against interest and may not be used in a subsequent or collateral civil action for that purpose. *State v. Suick, supra; Brozosky v. State* (1928), 197 Wis. 446, 222 N. W. 311; *Ellsworth v. State* (1951), 258 Wis. 636, 46 N. W. (2d) 746. See Anno. Plea of nolo contendere or non vult contendere, 89 A. L. R. (2d) 540, 600, and 152 A. L. R. 253; 20 Am. Jur., Evidence (1965 Supp.), p. 125, sec. 648; 28A Words & Phrases (perm. ed.), Nolo Contendere, p. 293. The plea is extensively discussed in *Hudson v. United*

---

[2] Sec. 331. "PROHIBITED ACTS.

"The following acts and the causing thereof are prohibited:

"(a) The introduction or delivery for introduction into interstate commerce of any food, drug, device, or cosmetic that is adulterated or misbranded."

Sec. 352. "MISBRANDED DRUGS AND DEVICES.

"A drug or device shall be deemed to be misbranded—

"(a) *False or misleading label.*

"If its labeling is false or misleading in any particular."

*States* (1926), 272 U. S. 451, 47 Sup. Ct. 127, 71 L. Ed. 347.

Under the majority rule this distinction in the pleas does not carry over to the conviction. A judgment of conviction based on a plea of *nolo contendere* is a conviction which contains all the consequences of a conviction based on a plea of guilty or a verdict of guilty. There is no difference in the nature, character or force of a judgment of conviction depending upon the nature of the underlying plea. *State v. Suick, supra; Ellsworth v. State, supra;* see Anno. Plea of nolo contendere or non vult contendere, 89 A. L. R. (2d) 540, 604; Anno. What constitutes former "conviction" within statute enhancing penalty for second or subsequent offense, 5 A. L. R. (2d) 1080, 1103, sec. 15, Plea of nolo contendere. Consequently we have a conviction which is attributable to Lee.

In determining whether the conviction is of an offense involving moral turpitude for the purpose of applying sec. 152.07 (2), Stats., this court agrees with the circuit judge that "the crime itself must be one with the inherent elements of moral turpitude." This court is restricted in its consideration to the elements of the offense disassociated from the particular facts and circumstances surrounding its commission, and the crime by extraneous evidence can be neither gilded with virtue nor tarnished with vice. This view follows from the fact sec. 152.07 (2) makes the record of the conviction conclusive evidence. A similar view was taken in *State v. Willstead* (1946), 248 Wis. 240, 21 N. W. (2d) 271, of sec. 147.20, Stats. 1945, which authorized a revocation of a license to practice medicine upon a conviction of a crime involving moral turpitude. In that case we held the defendant had no right to explain or qualify the facts and circumstances surrounding his conviction upon a plea of guilty to the unlawful sale of narcotics because the statute made the conviction and not the facts upon which it was grounded the cause for

revoking the license. This view was also taken by the California court in *Lorenz v. Board of Medical Examiners* (1956), 46 Cal. (2d) 684, 298 Pac. (2d) 537, which involved a revocation of a license to practice medicine upon a conviction under the Alcoholic Beverage Control Act. This does not mean, however, that evidence is not admissible of the nature of the crime and its relationship to the mores of the community to determine whether the elements of the crime constitute moral turpitude.

We think a violation of 21 U. S. Code, secs. 331 (a) and 352 (a), does not constitute a crime involving moral turpitude for several reasons. The introduction into interstate commerce of a misbranded drug or food product prohibited in sec. 331 (a) is made a misdemeanor by sec. 333 (a) and the offense does not include an element of the intent to defraud or mislead. Violations of sec. 331 (a) committed with such an animus or intention constitute an offense under sec. 333 (b) which provides much more serious penalties of imprisonment not exceeding three years or a fine of not more than $10,000, or both. Nor did the offense of which Lee was convicted involve the elements of fraud, deceit, criminal intent or any of the usual elements of moral turpitude. *V. E. Irons, Inc., v. United States* (1st Cir. 1957), 244 Fed. (2d) 34, 43, certiorari denied, 354 U. S. 923, 77 Sup. Ct. 1383, 1 L. Ed. (2d) 1437. Neither is it necessary to a conviction under sec. 331 (a) of 21 U. S. Code to charge and prove any awareness of wrongdoing, bad faith or motives. *United States v. Greenbaum* (3d Cir. 1943), 138 Fed. (2d) 437; *Triangle Candy Co. v. United States* (9th Cir. 1944), 144 Fed. (2d) 195; *United States v. Kaadt* (7th Cir. 1948), 171 Fed. (2d) 600; *United States v. Sprague* (E. D. New York Cir. 1913), 208 Fed. 419; *United States v. H. Wool & Son* (2d Cir. 1954), 215 Fed. (2d) 95, 98.

Since the mere fact the introduction in interstate commerce of a misbranded drug is sufficient to constitute the crime, there is no moral turpitude involved. In *United*

*States v. Dotterweich* (1943), 320 U. S. 277, 280, 64 Sup. Ct. 134, 88 L. Ed. 48, which involved a charge of misbranding in violation of the federal food and drug laws, the court characterized such law as "legislation whereby penalties serve as effective means of regulation. Such legislation dispenses with the conventional requirement for criminal conduct—awareness of some wrongdoing. In the interest of the larger good it puts the burden of acting at hazard upon a person otherwise innocent but standing in responsible relation to a public danger." This case was approved in *Morissette v. United States* (1952), 342 U. S. 246, 259, 72 Sup. Ct. 240, 96 L. Ed. 288.

For purposes of revocation of licenses, a crime involving moral turpitude has been considered in this state as an offense which involved some guilty knowledge or wrongful intent or an act which is considered inherently wrongful regardless of whether it was punishable by law or not. It was the doing of the act of such character rather than its prohibition by law which determined the moral turpitude. It is said that such acts are *malum per se,* not *malum prohibitum.* *State v. McCarthy* (1949), 255 Wis. 234, 38 N. W. (2d) 679; *State v. McKinnon* (1953), 263 Wis. 413, 57 N. W. (2d) 404; *State v. Brodson* (1960), 11 Wis. (2d) 124, 103 N. W. (2d) 912; *State v. Roggensack* (1963), 19 Wis. (2d) 38, 119 N. W. (2d) 412. In *Roggensack* this court broadened the grounds of what constituted unprofessional conduct on the part of an attorney by including therein conduct not involving moral turpitude. These cases, however, are not authority for a changing concept of moral turpitude.

Many of the established cases take the definition of moral turpitude as "an act of baseness, vileness or depravity in the private and social duties which a man owes to his fellow men or to society in general." 20 Am. and Eng. Enc. Law (2d ed.), 872. See Anno. What offenses involve moral turpitude within statute providing grounds for denying or revoking license of dentist, physician, or

surgeon, 109 A. L. R. 1459; 41 Am. Jur., Physicians & Surgeons, p. 180, sec. 55. Webster's New International Dictionary (3d ed.) defines "moral turpitude" as "an act or behavior that gravely violates the moral sentiment or accepted moral standards of the community" and "the morally culpable quality held to be present in some criminal offenses as distinguished from others."

But it is contended by the board that the concept of moral turpitude is changing and in shaping that concept the purpose of ch. 152, Stats., to protect public health must be considered. It is not to be denied the many accepted moral standards of a community vary from time to time and thus may affect what constitutes moral turpitude. But even on the appellant's theory that morals are pretty much a matter of time and geography, we have not yet arrived at the time and place when a misdemeanor for introducing in interstate commerce misbranded food or drugs without an intent to deceive or defraud involves moral turpitude. We do not agree the concept of moral turpitude, like some other legally sanctioned concepts, is dependent upon "the felt necessities of the time" (Holmes, The Common Law, p. 1). Such an argument would logically make all acts which are prohibited by law involve moral turpitude simply because they are prohibited. While the legislature in the interest of public health could create an offense involving moral turpitude, Congress did not do so in creating sec. 331 (a) of Title 21 U. S. Code.

The board also contends it is inherently immoral to peddle drugs on the representation they will be adequate and effective for the prevention and treatment of innumerable diseases when Lee knew such claims were preposterous. It alleges misbranding by Lee in his labeling of the drug Vitamin G as containing representations or suggestions it would be adequate and effective for the prevention and treatment of some 48 serious diseases ranging from alopecia to varicose veins and in the labeling of Cyroplex, a concentrate "from alfalfa, carrot, beef

and fish liver lipoids, yeast, wheat germ, rice bran, liver, mushroom, green peas (whole plant), biologically processed corn," as being adequate to treat 79 serious illnesses from abortion to virus infections. It may be as claimed by the board that what Lee calls a food nutritional supplement is what the board calls a nostrum, but that question is not before us by virtue of Lee's conviction, nor is Lee's knowledge.

If the board wants to use the offense which does not involve moral turpitude and show that the act was committed by Lee under circumstances which did involve moral turpitude, then the issue is not the conviction as a ground for revocation but rather Lee's conduct as constituting conduct unbecoming a professional man. Proof of the misbranding and of the fraud or deceit may be made on such issue and the board's argument based on public health would be pertinent.

*By the Court.*—Judgment affirmed.

WILKIE, J., took no part.