BANAS, Plaintiff in error, v. STATE, Defendant in error.
[Two cases.]

*March 3—April 11, 1967.*

470

The cause was submitted for the plaintiff in error on the brief of *Urban Banas* of St. Paul, Minnesota, *pro se,* and for the defendant in error on the brief of *Bronson C. La Follette,* attorney general, *William A. Platz* and *Betty R. Brown,* assistant attorneys general, and *Roger P. Murphy,* district attorney of Waukesha county.

HALLOWS, J.   While the brief of Banas lacks unity and coherence and raises sporadically many questions, its complaints may be collated under four main arguments: (1) It was error for the trial court not to allow him to impeach the credibility of a juvenile witness by the use of the witness' juvenile court record; (2) the juvenile court judge had no power to instruct the juvenile court clerk to disobey a defense subpoena to produce the record of the juvenile state witness; (3) there was insufficient credible evidence to sustain the finding of guilt beyond a reasonable doubt; and (4) the conviction should be reversed in the interests of justice.

Banas was found guilty of taking a four-door 1960 Oldsmobile belonging to Donald Grindrod from a parking lot of the White Sails Supper Club in the lake region of Waukesha county on the night of May 29, 1963. About eight days later the damaged car was found in Rockford, Illinois, and still later Banas was located in New York City, arrested, and brought back to Wisconsin on an extradition waiver. The primary witness for the prosecution was a sixteen-year-old boy, who was the parking-

lot attendant at White Sails Supper Club on the night the car was stolen. Banas had worked for a few days as a dishwasher in a resort near the White Sails Supper Club, had been drinking during the day of May 29, 1963, and had not returned to his job on that day or subsequently.

The juvenile testified he saw Banas in front of the supper club on the evening of May 29th and was as close as three feet from him. He saw Banas playing with a dog and after a while get into an Oldsmobile matching the description of the Grindrod auto and drive away. At that time he appeared somewhat intoxicated and was wearing khaki pants and a gray sweatshirt. Counsel for Banas was prevented from examining the juvenile witness concerning his alleged juvenile court record. It is argued this record would show the witness had been found delinquent by the Waukesha county juvenile court and other matters including his apprehension and interrogation concerning an auto theft, all of which would go to his credibility. The trial court ruled the juvenile court records were confidential and could be released only by the juvenile court judge and the finding of the juvenile court, that the witness stole an automobile, was not a conviction in a criminal sense and could not be used for impeachment purposes.

Banas now claims his constitutional rights were violated by this refusal to permit him to impeach the witness with the witness' juvenile record. We think not. This point has previously been decided by this court in *Sprague v. State* (1943), 243 Wis. 456, 10 N. W. (2d) 109, and in *Smith v. Rural Mut. Ins. Co.* (1963), 20 Wis. (2d) 592, 123 N. W. (2d) 496. It is true that sec. 885.19 (formerly sec. 325.19), Stats., provides a conviction may by record or cross-examination be shown to affect the credibility of a witness who has been convicted of a criminal offense; however, juvenile offenders are not persons who have been convicted, even though evidence

of the crime is the basis for a finding of delinquency. Sec. 48.38 (1), Stats., expressly provides the adjudication by the juvenile court of the status of any child imposes no civil disabilities such as are ordinarily imposed by conviction and does not brand such child a criminal and such adjudication is not "deemed a conviction." The theory and philosophy of juvenile delinquency statutes as being the avowed antithesis of criminal provisions have recently been thoroughly treated in *Winburn v. State* (1966), 32 Wis. (2d) 152, 145 N. W. (2d) 178. Under the prohibitions of sec. 48.38 (1) the disposition of the child's case and any evidence given in the juvenile court are not admissible as evidence against the child in any case or proceeding in any other court.

In the *Sprague Case* the defendant who was charged with statutory rape sought to introduce the juvenile court record of the complaining witness. This court affirmed the trial court's refusal to permit the introduction of this record because of the prohibitions of sec. 48.07 (3), Stats., which became sec. 48.38 (1) when the Children's Code was enacted by ch. 575, Laws of 1955. In the *Smith Case* we held this section forbade the asking of a minor driver, who was a witness, whether as a result of the accident her driver's license had been suspended by the juvenile court. Over the objection that this section was unconstitutional as violating the due process and equal protection clauses of the state and federal constitutions, we sustained sec. 48.38 (1) as a valid implementation of the strong public policy to protect the child and as being within the legislature's power to make reasonable rules for limiting the admission of evidence and to make valid classifications of people for that purpose.

Nor is this protection limited, as contended by Banas, to cases wherein the juvenile is himself in jeopardy or on trial. We think the language of sec. 48.38 (1), Stats., and the public policy for its enactment requires the protection of the child not only when he is a party in an action

but also when he is a witness. The role of the juvenile as a party or a witness does not determine the nature of the juvenile court's finding and does not characterize the finding as a conviction when the juvenile is a witness but not when the juvenile is a party.

Banas also contends the trial court's ruling that the defense was not to go into anything relating to the juvenile court record was unnecessarily broad and denied the use of "innuendo, an accepted trial tactic in referring to a witness' character, motives and credibility." Such argument is without merit and this court has condemned the use of "irrelevancies insinuating that the witness is a person of bad moral character, tending to degrade him and thus prejudice him in the eyes of the jury" as an impeachment device. *Scrafield v. Rudy* (1954), 266 Wis. 530, 533, 64 N. W. (2d) 189.

We think the juvenile court judge did not abuse his discretion in refusing to allow the court clerk to appear with the court records of the witness in response to Banas' subpoena. The clerk could not produce the records without the juvenile court's approval, as the juvenile court records are not to be inspected or disclosed except by order of the juvenile court. Secs. 48.02 (2), 48.26 (2) and 48.38 (2), Stats. It is true that under this latter section the juvenile court can disclose the records if it is in the best interests of the child or of the administration of justice. However, in this case the subpoena requested juvenile court records which the defense intended to use to impeach a juvenile witness on the theory such records constituted evidence of conviction of a crime. Because such records would have been inadmissible for this purpose even if they had been produced in response to the subpoena, the juvenile court judge did not impede the administration of justice by his refusal. Since the records were inadmissible, their release would not have aided the administration of justice, if indeed, knowing their intended use, the juvenile court judge had any

power to release the juvenile court records under sec. 48.38 (2).

Wisconsin's position with respect to the denial of the use of juvenile records for impeachment purposes is not unique. See *Thomas v. United States* (1941), 74 App. D. C. 167, 121 Fed. (2d) 905; 98 C. J. S., Witnesses, pp. 409, 410, sec. 507. The difficulty in this area lies in balancing the interests of the minor and his chances for rehabilitation against the value of the evidence for impeachment purposes. See Note, Evidence—Impeachment of Witnesses—Use of Adjudications of Juvenile Delinquency and Specific Acts of Misconduct Committed by Juveniles, 33 New York University Law Review (1958), 406. In 1955 the legislature strengthened its previous choice of policy for Wisconsin by enacting in the Children's Code additional limitations to assure the confidentiality of juvenile records. See 1955 Report, Wisconsin Legislative Council, Conclusions and Recommendations of the Child Welfare Committee, vol. 4, part 1, p. 29.

The contention of Banas that there is not sufficient evidence to support the conviction beyond a reasonable doubt is based primarily on disregarding the evidence of the juvenile witness. If this evidence was disbelieved, it is quite probable no jury would or should have been convinced beyond a reasonable doubt of Banas' guilt. However, accepting this testimony, which the jury had a right to do, and considering it with the collateral testimony of other prosecution witnesses which presented circumstantial evidence relating to Banas' presence at the White Sails Supper Club on the evening of May 29th, his identity, the fact he appeared intoxicated, the clothing he wore and his conduct, all of which corroborated the juvenile witness' story in some respects, the jury could be convinced of Banas' guilt beyond a reasonable doubt.

This is not a proper case for this court to exercise its discretionary power granted by sec. 251.09, Stats., to reverse in the interests of justice. Banas has not demonstrated that there was a miscarriage of justice or that a new trial would probably result in his acquittal. *Commodore v. State* (1967), 33 Wis. (2d) 373, 383, 147 N. W. (2d) 283; *Lock v. State* (1966), 31 Wis. (2d) 110, 118, 142 N. W. (2d) 183. Time and space do not permit the answering of every argument and assertion in Banas' brief. We have considered all of them and find them without merit. While we appreciate some convicts believe justice is synonymous with a verdict of not guilty, this is a mistaken belief in this case.

*By the Court.*—Judgment and order affirmed.

HANSEN, J., took no part.