STATE of Wisconsin, Plaintiff-Respondent,†

v.

James R. GUSTAFSON, Defendant-Appellant-Petitioner.

Supreme Court

*No. 81–2015–CR. Argued March 29, 1984.—Decided June 28, 1984.*

(Also reported in 351 N.W.2d 653.)

† Motion for reconsideration granted September 4, 1984.

For the defendant-appellant-petitioner there were briefs and oral argument by *Louis B. Butler, Jr.,* assistant state public defender.

For the plaintiff-respondent the cause was argued by *Stephen W. Kleinmaier,* assistant attorney general, with

whom on the brief was *Bronson C. La Follette,* attorney general.

WILLIAM A. BABLITCH, J. James Gustafson seeks review of a decision affirming his conviction of two counts of second-degree sexual assault. During trial, Gustafson's minor son, R.G., was called as a witness on Gustafson's behalf. Gustafson argues that the trial court erred by allowing into evidence testimony that R.G. had entered a plea of no contest in juvenile court and had been judged delinquent on charges stemming from the same incident that resulted in one of the charges against Gustafson. Gustafson also argues that because evidence was presented on one of the counts indicating that he had committed more than one act of sexual contact with the minor female, B.G., the trial court erred in not instructing the jury that it had to unanimously agree on the specific act he committed.

Despite the failure of Gustafson's attorney to raise a specific objection to the admissibility of evidence of R.G.'s delinquency adjudication and no contest plea, this court holds that it was error to admit such evidence. A majority of this court, however, holds that the error was not plain error. A majority also holds that Gustafson was not denied his rights to due process and to a unanimous jury verdict by the trial court's failure to give a specific unanimity instruction. However, because one member of this court would reverse and remand on the basis that the admission of evidence of R.G.'s juvenile adjudication and no contest plea was plain error requiring reversal, and because three other members of this court would reverse and remand for a new trial on the basis that Gustafson's constitutional rights were violated by the trial court's failure to instruct the jury that it had to unanimously agree on the specific act he committed in order to reach a unanimous verdict, there is a majority for reversing and remanding for a new trial.

We therefore reverse the decision of the court of appeals and remand for a new trial.

On October 10, 1980, Gustafson and his fifteen year old son, R.G., met two girls, C.Y. and B.G., who were fourteen-year-old classmates of R.G.'s, in Manitowoc. C.Y. and B.G. asked R.G. to ask his father to buy liquor for them, which Gustafson did. All four went to a park and drank. After C.Y. and B.G. became drunk, Gustafson took them and R.G. to his apartment. C.Y. and B.G. became ill in the bathroom. R.G. joined C.Y. in the bathroom while Gustafson took B.G. from the bathroom to the living room.

B.G. fell asleep on the sofa in the living room but awoke when Gustafson pulled up her sweater and bra, and touched her breast with his hand and with his mouth. Gustafson stopped when B.G. indicated that she had to use the bathroom.

B.G. stayed in the bathroom with C.Y. for a few minutes. Gustafson then took B.G. back to the sofa where she fell asleep. She was again awakened when Gustafson pulled up her sweater and touched her breasts. Gustafson also unzipped her pants, placed his hand inside of them and touched her pubic area with his hand. B.G. hit Gustafson, ran out of the apartment, and fell asleep in some bushes.

Once C.Y. discovered that B.G. had left, she demanded that Gustafson take her home. As he drove her home, Gustafson stopped the car, reached under C.Y.'s shirt and touched her breast. After C.Y. hit him, Gustafson drove her home.

Gustafson was charged with two counts of second-degree sexual assault, contrary to sec. 940.225 (2) (e), Stats. That statute provides: "SECOND DEGREE SEXUAL ASSAULT. Whoever does any of the following is guilty of a Class C felony: . . . (e) Has sexual contact or sexual intercourse with a person who is over the age of 12 years and under the age of 16 years." One count with which Gustafson was charged related to the alleged

sexual assault of B.G., and one count related to the alleged sexual assault of C.Y.

Prior to Gustafson's trial, a delinquency petition was filed against R.G. relating to his alleged sexual assault of C.Y. during the same evening that Gustafson allegedly sexually assaulted B.G. and C.Y. R.G. pled no contest in juvenile court and subsequently was adjudicated delinquent.

Before Gustafson's trial, the state informed the trial court that it believed Gustafson planned to call R.G. as a witness at trial. The state asked the court to rule that it could question R.G. about his no contest plea and his adjudication of delinquency. The court ruled that the state could question R.G. about the adjudication of delinquency.

At trial, Gustafson called R.G. as a witness. During direct examination of R.G., the following exchange occurred between Gustafson's attorney and R.G.:

"Q: [Gustafson's attorney] Is it correct that you were adjudged delinquent for the events occurring that evening? [the night Gustafson allegedly assaulted C.Y. and B.G.]
"A: [R.G.] What do you mean by delinquent?
"Q: Well, The Court here found you to be delinquent, didn't they?
"A: I don't know. I pleaded no contest."

During cross-examination of R.G. by the district attorney, this exchange took place:

"Q: [District Attorney] You came into court, didn't you, not too long ago and entered a no contest plea to that very charge of touching [C.Y.], of sexually assaulting her, didn't you?
"A: [R.G.] Yeah.
"Q: You had that explained to you at that time, that entering a no contest plea meant that the Court was going to find you guilty? Didn't the Judge explain that to you?
"A: Yeah, I guess so.

"Q: That it was essentially admitting that you had done what you were charged with?

"A: I guess so."

At trial, the trial court gave the following definition of sexual contact in the jury instructions, as it related to the alleged sexual assault of B.G., without objection by counsel: "Sexual contact is any intentional touching of the breasts or pubic area, clothed or unclothed, of [B.G.] with the defendant's hand or the defendant's mouth." The trial court also gave a standard unanimity instruction, which stated: ". . . this is a criminal, not a civil case, and therefore, before the jury can return a verdict which can legally be received, such verdict must be reached unanimously. In a criminal case all twelve jurors must agree in order to arrive at a verdict."

The jury found Gustafson guilty of both counts of sexual assault. Gustafson appealed to the court of appeals. In a published decision, cited below,[1] the court of appeals affirmed his conviction. Gustafson filed a petition for review with this court, which we granted.

The issues for review are:

(1) Did the trial court err in admitting evidence at Gustafson's trial of R.G.'s prior juvenile delinquency adjudication and R.G.'s no contest plea?

(2) Was Gustafson denied his constitutional rights to due process and to a unanimous jury verdict because, although evidence was presented that Gustafson had performed more than one act of sexual contact with the minor female, B.G., the trial court did not instruct the jury that it had to unanimously agree on the specific act he committed before it could find him guilty of second-degree sexual assault?

Gustafson argues that it was error to admit evidence of R.G.'s prior adjudication of delinquency and of his

---

[1] *State v. Gustafson,* 112 Wis. 2d 369, 332 N.W.2d 848. (Ct. App. 1983)

no contest plea. The state contends, however, that Gustafson waived his right to have the alleged error reviewed as a matter of right because Gustafson allegedly failed to properly object at trial. We agree.

Under sec. 901.03 (1) (a), Stats., a party may not claim that a ruling admitting evidence was erroneous unless a substantial right of the party is affected and ". . . a timely objection or motion to strike appears of record, stating the specific ground of objection, if the specific ground was not apparent from the context. . . ." We have repeatedly held that a specific objection to evidence is necessary in order to entitle the objector to raise the issue on appeal. *See Holmes v. State*, 76 Wis. 2d 259, 271, 251 N.W.2d 56 (1977) ; *State ex rel. Hussong v. Froelich*, 62 Wis. 2d 577, 602–03, 215 N.W.2d 390 (1974).

The record in this case indicates that Gustafson's attorney did not make a specific objection to the admissibility of evidence relating to R.G.'s juvenile adjudication, or to the admissibility of R.G.'s no contest plea. Prior to trial, the state asked the trial court to rule on the admissibility of evidence that the state wanted to use to impeach R.G. if the defense called him as a witness. The state specifically referred to R.G.'s prior juvenile adjudication of delinquency and his no contest plea entered in juvenile court. The state indicated that it intended to cross-examine R.G. about his prior admissions. Gustafson's attorney responded that R.G.'s no contest plea was not and should not be construed as an admission. This is the only statement by Gustafson's attorney that could be construed as an objection to the admissibility of evidence relating to R.G.'s adjudication of delinquency and his no contest plea. However, immediately thereafter his attorney stated, "Our objection is to allowing testimony as to [R.G.'s] conviction without the tempering evidence that it was pursuant to a no contest plea, not a

guilty plea." The trial court subsequently ruled that the state could question R.G. about the adjudication of delinquency. After the court ruled, Gustafson's attorney stated that R.G. could ". . . explain that away, that he did plead no contest . . ." and that ". . . he [R.G.] should . . . be able to testify that he didn't make any admissions, that he did it on a plea of no contest." He subsequently agreed, both before and after the trial court made its ruling, that R.G. could testify concerning his no contest plea. In addition, during direct examination of R.G. at trial, Gustafson's attorney specifically asked R.G. about the adjudication of delinquency, to which R.G. responded that he pleaded no contest. On cross-examination, the district attorney asked R.G. about his no contest plea. Gustafson's attorney did not object to the admissibility of this evidence. Based on the foregoing, we conclude that Gustafson waived the right to have the alleged error reviewed as a matter of right.

Gustafson contends that if there was a waiver, this court should nevertheless review the alleged error pursuant to sec. 901.03 (4), Stats., which provides: "PLAIN ERROR. Nothing in this rule precludes taking notice of plain errors affecting substantial rights although they were not brought to the attention of the judge." Under this provision, there may be a review and a reversal of a conviction if plain error was committed. *State v. Sonnenberg*, 117 Wis. 2d 159, 176, 344 N.W.2d 95 (1984). Therefore, we must determine whether the admission of evidence concerning R.G.'s adjudication and his no contest plea was error and if it was, whether it was plain error.

Gustafson argues that under sec. 48.35 (1) (b), Stats., it was error to allow evidence of R.G's juvenile adjudication and his no contest plea to be admitted into evidence. We agree.

Under sec. 48.35 (1) (b), Stats. 1981–82 of the Children's Code, ch. 48, the disposition of a juvenile case and

juvenile records are not admissible into evidence except under certain specified circumstances. That provision states:

"The disposition of a child, and any record of evidence given in a hearing in court, shall not be admissible as evidence against the child in any case or proceeding in any other court except:

"1. In sentencing proceedings after conviction of a felony or misdemeanor and then only for the purpose of a presentence study and report;

"2. In a proceeding in any court assigned to exercise jurisdiction under this chapter; or

"3. In a court of civil or criminal jurisdiction while it is exercising the jurisdiction of a family court and is considering the custody of children."

In *Smith v. Rural Mut. Ins. Co.,* 20 Wis. 2d 592, 123 N.W.2d 496 (1963), we discussed the policies behind the enactment of sec. 48.38(1), Stats. 1963, which contained language similar to current sec. 48.35(1)(b). Former sec. 48.38(1), 1963, is cited in full below.[2] We noted that the legislature enacted the Children's Code to promote the best interests of the children of this state. We also noted that the statutory prohibition against admission into evidence of juvenile proceedings into other state courts was an implementation of the stated purpose of promoting the best interests of children. 20 Wis. 2d at 599. Finally, we recognized that this statutory prohibi-

[2] Section 48.38(1), Stats. 1963 provided:

"**Effect of juvenile court proceedings.** (1) No adjudication upon the status of any child in the jurisdiction of the juvenile court shall operate to impose any of the civil disabilities ordinarily imposed by conviction, nor shall any such child be deemed a criminal by reason of such adjudication, nor shall such adjudication be deemed a conviction. The disposition of any child's case or any evidence given in the juvenile court shall not be admissible as evidence against the child in any case or proceeding in any other court, nor shall such disposition or evidence disqualify a child in any future civil service examination, appointment or application." Section 48.38(1) was repealed by ch. 354, § 62, Laws of 1977.

tion is based on a strong social policy of protecting children. 20 Wis. 2d at 599–600. This policy has been summarized as follows:

"The fundamental philosophy of the juvenile court laws is that a delinquent child is to be considered and treated not as a criminal but as a person requiring care, education and protection. He is not thought of as 'a bad man who should be punished, but as an erring . . . child who needs help.' Thus, the primary function of juvenile courts . . . is not conviction or punishment for crime, but crime prevention and delinquency rehabilitation. It would be a serious breach of public faith, therefore, to permit these informal and presumably beneficent procedures to become the basis for criminal records, which could be used to harass a person throughout his life. . . ." *Thomas v. United States,* 121 F.2d 905, 908–09 (D.C. Cir. 1941).

In *Banas v. State,* 34 Wis. 2d 468, 149 N.W.2d 571 (1967), we concluded that the statutory protection afforded to juveniles by former sec. 48.38(1), Stats., was not limited to cases in which the juvenile himself is in jeopardy or on trial. We held that the language of sec. 48.38(1), and the important public policy supporting its enactment, requires protecting the juvenile from admission of the juvenile's record into evidence not only when the juvenile is a party in an action but also when he or she is a witness. We therefore concluded in *Banas* that the trial court had properly refused to allow the defendant to impeach the credibility of a juvenile witness by use of the witness' juvenile court record.

We conclude that under sec. 48.35(1)(b), Stats., and our prior decision in *Banas,* it was error in this case to admit evidence of R.G.'s juvenile adjudication and evidence of his no contest plea. Such evidence relates to the disposition of R.G.'s case in juvenile court and record of evidence given in that court, which sec. 48.35(1)(b)

expressly states is not admissible as evidence against the juvenile in any proceeding in any other court except under certain circumstances specified in that provision. None of those circumstances is present in this case. In addition, as we held in *Banas,* the protection afforded to juveniles by what is now sec. 48.35 (1) (b) applies even when the juvenile is a witness in another court proceeding, which occurred in this case.

The court of appeals, in holding that it was not error to admit evidence of R.G.'s no contest plea, characterized the plea as an admission. The court indicated that this "admission of guilt", which was made prior to Gustafson's trial, was inconsistent with R.G.'s testimony at Gustafson's trial. The court therefore concluded that evidence of R.G.'s no contest plea fell within sec. 906.13, Stats., which allows extrinsic evidence of a prior inconsistent statement of a witness. Similarly, it is clear from the record that when the district attorney cross-examined R.G., the district attorney equated R.G.'s no contest plea with an admission of guilt by R.G.

We have previously held that a plea of no contest is not an admission against interest and may not be used collaterally for that purpose. *See Lee v. State Board of Dental Examiners,* 29 Wis. 2d 330, 334, 139 N.W.2d 61 (1966). Thus, the state's use of evidence of R.G.'s plea of no contest as an admission was improper, and the court of appeals' characterization of the plea as an admission was clearly contrary to law.

Because we have concluded that it was error to admit evidence of R.G.'s juvenile adjudication and his no contest plea, we must determine whether the error constitutes plain error. In *Sonnenberg,* this court discussed the plain error doctrine and stated, ". . . plain error is 'error so fundamental that a new trial or other relief must be granted even though the action was not objected to at the time.' " 117 Wis. 2d at 177, quoting *Virgil v.*

*State,* 84 Wis. 2d 166, 191, 267 N.W.2d 852 (1978). We also referred to Chief Justice Beilfuss' concurring opinion in *Virgil v. State,* 84 Wis. 2d 166, 267 N.W.2d 852 (1978), which stated that the plain error exception to the contemporaneous objection rule ". . . should be used sparingly and only in cases . . . where a basic constitutional right has not been extended to the accused." 117 Wis. 2d at 177, quoting *Virgil v. State,* 84 Wis. 2d at 195 (Beilfuss, J., concurring). In *Sonnenberg,* we held that an error in admitting extrinsic rebuttal evidence on a collateral matter to impeach a witness did not deny the defendant ". . . any fundamental constitutional right . . ." or involve ". . . a substantial impairment of the right of fair trial." 117 Wis. 2d at 178.

We conclude that in this case, Gustafson was not denied any constitutional right, nor was there a substantial impairment to the right of a fair trial because of the error in admitting into evidence R.G.'s no contest plea and evidence of his delinquency adjudication. Thus, the error was not "plain error". The connection between the erroneous admission of that evidence and any fundamental constitutional right of Gustafson or his right to a fair trial is virtually nonexistent. That evidence was relevant to R.G.'s conduct with C.Y. at the apartment, which was not an issue at Gustafson's trial. Although that evidence was used to impeach R.G.'s credibility as a witness, R.G. offered little testimony that directly related to Gustafson's conduct with B.G. at the time Gustafson allegedly sexually assaulted her. It is undisputed that R.G. was in the bathroom with C.Y. during the time that Gustafson was in the living room with B.G., and that R.G. did not see what happened in the living room between Gustafson and B.G. The only testimony R.G. offered that related to Gustafson's conduct with B.G. in the living room was his negative response to the question whether he heard anything out of the ordinary coming

from the living room when Gustafson and B.G. were in the living room. This contradicted C.Y.'s testimony that when she was at Gustafson's apartment, she heard B.G. scream for her to come and help B.G. R.G. offered no testimony that was relevant to Gustafson's conduct with C.Y. when Gustafson drove her home. It is undisputed that R.G. did not accompany Gustafson when Gustafson drove C.Y. home. We are not persuaded that the erroneous introduction of R.G.'s plea and adjudication, which has such minimal relevance to the issue of Gustafson's guilt or innocence, implicated any constitutional right of Gustafson or substantially impaired his right to a fair trial.

Gustafson nevertheless argues that the trial court's failure to follow the requirements of sec. 48.35(1)(b), Stats., which prohibits admission of a juvenile's disposition and record of evidence in another court proceeding, deprived him of his right to due process. He contends that when the state legislature provides a right, the arbitrary denial of that right violates the fourteenth amendment to the United States Constitution. We disagree, however, that the trial court's failure to adhere to the requirements of sec. 48.35(1)(b) deprived Gustafson of any due process rights. As previously noted, sec. 48.35(1)(b) is designed to protect juveniles and to ensure that juvenile records and proceedings remain confidential. Although the admission of evidence relating to R.G.'s delinquency adjudication and no contest plea was in clear violation of sec. 48.35(1)(b), the person whose interests may have been implicated by that violation was R.G., not Gustafson.[3] We therefore conclude that the erroneous ad-

---

[3] Gustafson also argued that the admission of evidence relating to R.G.'s delinquency adjudication and no contest plea violated two statutes in addition to sec. 48.35(1)(b), Stats. Those statutes are sec. 904.10, which prohibits admission of evidence of a no contest plea in any civil or criminal proceeding against the person

mission of that evidence did not deny Gustafson any constitutional rights, nor did it impair his right to a fair trial.

Even if Gustafson's attorney's statements could be construed as a specific objection, as he alleges, the erroneous ruling allowing that evidence to be admitted would not have mandated a reversal in this case because the error in admitting evidence of R.G.'s delinquency adjudication and no contest plea was harmless.

This court has defined the test of harmless error as follows:

"The test of harmless error is not whether some harm has resulted, but, rather, whether the appellate court in its independent determination can conclude there is sufficient evidence, other than and uninfluenced by the inadmissible evidence, which would convict the defendant beyond a reasonable doubt. *See Harrington v. California* (1969), 395 U.S. 250, 89 Sup. Ct. 1726, 23 L. Ed. 2d 284. This test is based on reasonable probabilities. Although the court in *Fahy v. Connecticut* (1963), 375 U.S. 85, 84 Sup. Ct. 229, 11 L. Ed. 2d 171, had talked about reasonable possibilities, *Harrington* shows the court no longer in fact uses that standard. A possibility test is the next thing to automatic reversal. In determining guilt 'beyond a reasonable doubt,' the human mind should not work on possibilities, but on reasonable probabilities." *Wold v. State,* 57 Wis. 2d 344, 356–57, 204 N.W.2d 482 (1973).

In addition, this court has stated that ". . . errors committed at trial should not overturn the conviction unless

who made the plea, and sec. 906.09(4), which provides that evidence of juvenile adjudications is not admissible under the rule that evidence that a witness has been convicted of a crime is admissible to attack the witness' credibility. His contention that the trial court's failure to follow statutory rules deprived him of due process also applies to these other provisions he alleges were violated. Even if those provisions were violated, however, the only person whose interests may have been implicated was R.G., not Gustafson.

it appears that the result might probably have been more favorable to the party complaining had the error not occurred." *Sonnenberg*, 117 Wis. 2d at 179.

In this case, there was sufficient evidence independent of and uninfluenced by the evidence relating to R.G.'s no contest plea and his delinquency adjudication to have enabled the jury to conclude that Gustafson was guilty beyond a reasonable doubt. Although Gustafson testified at trial that he never touched B.G.'s or C.Y.'s breasts or B.G.'s pubic area, this testimony was directly contradicted by B.G. and C.Y. at trial. B.G. testified that when she was at Gustafson's apartment, she fell asleep on the sofa. She stated that she awoke when Gustafson tried to pull up her sweater, and that Gustafson touched her breast with his hand and his mouth. B.G. also testified that she again fell asleep on the sofa and was again awakened when Gustafson pulled up her sweater and touched her breasts. She stated that Gustafson also put his hand inside of her pants and felt her pubic area. She testified that after this occurred, she ran out of the apartment and subsequently saw an acquaintance, Francine Neelis, and a friend of Neelis'.

C.Y. testified that while she was in the bathroom at Gustafson's apartment and while B.G. was in the living room, C.Y. heard B.G. scream for C.Y. to come and help her. C.Y. also testified that when Gustafson was driving her home, he stopped the car, grabbed her, and touched her breasts under her bra, after which she hit him.

The jury also heard testimony that, if believed, would tend to support B.G.'s testimony. Francine Neelis testified that at approximately 10:00–11:00 p.m. during the evening Gustafson allegedly sexually assaulted B.G. and C.Y., she and a friend, Tina Jones, saw B.G. running outside. Other testimony indicated that this occurred after B.G. had run out of Gustafson's apartment. Neelis stated that B.G. was crying "really hard" and that she appeared

"kind of hysterical." She testified that when she saw B.G., B.G. said, "Is there someone chasing me?"

Tina Jones testified that when she and Neelis saw B.G., B.G. appeared very confused and very scared, and said something to the effect that someone was after her. Both Neelis and Jones testified that they flagged down a squad car, and Neelis informed an officer in the car that B.G. was drunk and was on the lawn by a nearby church.

The jury additionally heard the testimony of William Narten, a police officer who was on duty the evening that Gustafson allegedly assaulted C.Y. and B.G. Narten testified that at approximately 10:22 p.m. that evening, he was driving his squad car and saw two girls waving for him to stop the car. The girls told him that there was a girl lying in the bushes at a nearby church. Narten testified that he located B.G. and placed her in the squad car, whereupon she stated that she had been sexually molested by a man. The testimony of B.G. and C.Y., if believed by the jury, which it clearly was, and other testimony presented at trial, was sufficient to support Gustafson's conviction beyond a reasonable doubt.

Gustafson also argues that he was denied his constitutional rights to due process and to a unanimous jury verdict because of the way the trial court defined sexual contact in relationship to B.G. in the jury instructions. Because the state's evidence concerning the alleged sexual assault of C.Y. by Gustafson supported only one possible sexual assault, the issue of a unanimous verdict is not involved in Gustafson's conviction for the sexual assault of C.Y.

As previously noted, the trial court instructed the jury that "sexual contact is any intentional touching of the breasts or pubic area, clothed or unclothed, of [B.G.] with the defendant's hand or the defendant's mouth." Gustafson contends that touching B.G.'s breast with his hand is a separate offense from touching her pubic area, and that

touching with his mouth is conceptually distinct from touching with his hand, thereby creating another separate offense. Gustafson therefore asserts the trial court erred in not instructing the jury to the effect that before the jury could find Gustafson guilty beyond a reasonable doubt, the jury had to unanimously agree on the specific act he committed. Although Gustafson concedes that this position may be contrary to this court's decision in *State v. Lomagro,* 113 Wis. 2d 582, 335 N.W.2d 583 (1983), he argues that *Lomagro* should be overruled.

The state argues that Gustafson waived any objection to the jury instructions because he failed to object to the instructions and failed to request a specific unanimity instruction. We disagree. In *State v. Baldwin,* 101 Wis. 2d 441, 304 N.W.2d 742 (1981), this court held that the defendant's failure to object to a disjunctive jury instruction would not preclude him from raising the objection on appeal because his challenge raised state and federal constitutional questions concerning the state's burden of proof and the defendant's right to a unanimous verdict. We noted that such matters went directly to the integrity of the fact finding process. 101 Wis. 2d at 446. Similarly, Gustafson's challenge to the jury instructions raises constitutional issues concerning his right to a unanimous verdict. This obviously impacts upon the integrity of the fact finding process. We therefore conclude that Gustafson is not precluded from raising this issue on appeal.

The majority of this court concludes that *Lomagro* is applicable to the facts of this case and that *Lomagro* should not be overruled. The majority also concludes that under *Lomagro,* the trial court in this case was not required to give the specific unanimity instruction that Gustafson urges.[4]

---

[4] Although the author of this opinion and Chief Justice Heffernan acknowledge that the issue of jury unanimity in this case is

The primary issue in *Lomagro* was whether the defendant's right to a unanimous verdict was violated when he was charged with one count of first-degree sexual assault, but evidence of several different acts of non-consensual sexual intercourse was introduced, and the jury was not instructed that in order to find the defendant guilty, it had to unanimously agree as to which act or acts he committed. In *Lomagro*, evidence was presented at trial that

controlled by *State v. Lomagro*, 113 Wis. 2d 582, 335 N.W.2d 583 (1983), the author and Chief Justice Heffernan disagree with the holding and analysis in that case. The author of this opinion and Chief Justice Heffernan agree with the analysis expressed in the dissenting opinion in *Lomagro*. *See* 113 Wis. 2d at 598–607 (Beilfuss, J., dissenting). In applying that analysis to the facts of this case, the author and Chief Justice Heffernan would conclude that the jury was presented with evidence of at least two and possibly four separate acts of sexual contact by Gustafson with B.G. The evidence indicated that while B.G. was at Gustafson's apartment on the night he allegedly sexually assaulted her, he touched her breast with his hand and then with his mouth. After a period of time elapsed, there was evidence that Gustafson again touched B.G.'s breasts with his hand, and then touched her pubic area with his hand. Some of these acts were separated by time, and involved different types of sexual contact. Under this court's prior decision in *Manson v. State*, 101 Wis. 2d 413, 304 N.W.2d 729 (1981), if more than one crime is presented to the jury, the jury is required to be unanimous as to a specific unlawful act before it may convict a defendant. 101 Wis. 2d at 419. Because the jury in this case was presented with evidence of more than one act of sexual contact, each of which could constitute the crime of second-degree sexual assault, jury unanimity was required as to at least one act. Thus, the author and Chief Justice Heffernan would hold that the trial court erred in not instructing the jury in this case that in order to find the defendant guilty of second-degree sexual assault of B.G., the jury had to unanimously agree that at least one specific act occurred. The author and Chief Justice Heffernan conclude that the majority's holding that the jury was not required to agree as to the commission of a particular act in order to reach a unanimous verdict violates the defendant's right to a unanimous verdict as guaranteed by Art. I, secs. 5 and 7 of the Wisconsin Constitution.

over a period of approximately two hours, at a number of different locations, the defendant had forced a woman to perform more than one act of penis-vagina intercourse, and an act of fellatio.

This court noted in *Lomagro* that if the jury is presented with evidence of multiple crimes, unanimity is required as to each crime. However, if the jury has been presented with evidence of alternative means of committing the *actus reus* element, i.e., the wrongful act, of one crime, unanimity on the particular alternative means of committing the crime is required only if the acts are conceptually distinct. Unanimity is not required if the acts are conceptually similar. 113 Wis. 2d at 592.

In applying this analysis to the facts in *Lomagro*, this court noted that the defendant had been charged with only one crime of sexual assault. This court therefore concluded that evidence of the acts of non-consensual sexual intercourse constituted alternative means of committing the one crime of sexual assault with which the defendant was charged. This court also concluded that these acts were conceptually similar, not distinct, and that the sexual assault was one continuing criminal episode. This court therefore held that although evidence of different acts was introduced at trial, the jury did not have to be unanimous as to which specific act the defendant committed in order to convict him. *See* 113 Wis. 2d at 598.

Like the defendant in *Lomagro*, the defendant in this case was charged with only one crime of sexually assaulting B.G. Although evidence was presented at Gustafson's trial indicating that he performed more than one act of sexual contact with B.G., the majority concludes that these acts of sexual contact were simply alternative means of committing the *actus reus* element, i.e. the wrongful act of sexual contact, involved in the crime of second-degree sexual assault. Thus, unanimity on the

particular alternative means of committing the crime is required in this case only if the acts are conceptually distinct. *See Lomagro,* 113 Wis. 2d at 582.

In this case, the acts of sexual contact performed by Gustafson included touching of B.G.'s breasts with his hand and mouth, and touching her pubic area with his hand. These acts all involved touching of an intimate body part of B.G. by the use of a body part of the defendant. In addition, each touching was done by Gustafson for purposes of sexual gratification. Thus, the majority concludes that the assaultive acts that Gustafson performed on B.G. are conceptually similar. That this is so is evidenced by the fact that the legislature has defined "sexual contact" for purposes of the sexual assault statutes in sec. 940.225 (5) (a) to include any intentional touching of a person's "intimate parts" by the use of any body part of the defendant for purposes that include sexual gratification. Section 939.22 (19), Stats., which defines words and phrases used in criminal statutes, defines "intimate parts" as ". . . the breast, buttock, anus, groin, scrotum, penis, vagina or pubic mound of a human being." In addition, as in *Lomagro,* the sexual assault of B.G. may be viewed as a single, continuous criminal transaction that occurred within a short time period. Under these circumstances, the general unanimity instruction that the trial court gave in this case was sufficient to assure a unanimous verdict.

Gustafson contends that even if *Lomagro* applies, he still was denied his right to a unanimous verdict. He argues that if the prosecutor is permitted to decide whether to charge separately the multiple crimes created by the legislature, or to charge only one crime because the alleged conduct constituted one continuing transaction, even though that conduct could involve separate crimes,

a new issue of fact is created. He asserts that the jury should have been instructed in this case that it had to determine whether there is one transaction or multiple transactions, and whether the crimes were of the same type or distinct. We disagree.

It is for the court, not the jury, to decide as a matter of law whether the defendant's conduct constitutes a single continuing transaction or multiple transactions that could then involve separate crimes. If the conduct involves separate transactions and separate crimes, the court must then instruct the jury that unanimity is required as to each. *See Lomagro,* 113 Wis. 2d at 592. If the court determines that the conduct constitutes one continuing transaction and one crime, the court is not required to instruct the jury that unanimity is required on the particular alternative means of committing the crime unless the acts are conceptually distinct. *Id.* Thus, in this case, it was for the court, not the jury, to make the determination whether Gustafson's conduct constituted a single transaction or multiple transactions in order to decide whether jury unanimity was required as to a particular act of sexual contact that Gustafson committed. The trial court therefore was not required to instruct the jury that it had to determine whether there was one transaction or multiple transactions, or whether there were separate crimes or one crime.

Gustafson also advances various arguments to support his contention that *Lomagro* should be overruled. After considering those arguments, the majority of this court concludes that they are without merit. Therefore, the majority holds that under the decision in *Lomagro,* even though evidence of different acts of sexual contact with B.G. was introduced at the trial in this case, the jury did not have to be unanimous as to which specific act Gustafson committed in order to find him guilty beyond a reasonable doubt of second-degree sexual assault of B.G. The

trial court therefore was not required to give a specific unanimity instruction in this case.

Gustafson also contends that his conviction must be reversed because there was insufficient evidence that Gustafson touched B.G.'s pubic area with his hand or his mouth to support the verdict of guilty. At trial, the court instructed the jury that "sexual contact" included "any intentional touching of the . . . pubic area . . . of [B.G.] with the defendant's hand or the defendant's mouth." Gustafson argues that because there allegedly was insufficient evidence on one of the theories of how Gustafson may have sexually assaulted B.G., reversal and a new trial is warranted. We disagree.

At trial, B.G. testified on direct examination that while she was sleeping on Gustafson's sofa, she felt like her ". . . pants were coming off." She also testified that Gustafson ". . . put his hand down there . . . on the pubic area." She stated that Gustafson touched her inside of her pants. On cross-examination, the defense attorney asked B.G.:

"Q: When Mr. Gustafson was touching your pubic area was that less than two seconds . . .?

"A: [B.G.] I don't know.

"Q: Was it about two seconds?

"A: I don't know. It wasn't very long though."

Gustafson points to the following testimony by B.G. during direct examination to support his argument that there was insufficient evidence that he touched B.G.'s pubic area with his hand:

"Q: [By district attorney] Was he [Gustafson] touching you inside or outside of your pants?

"A: Inside.

". . . .

"Q: Was it the area between your legs?

"A: No, just—Well, around there. I don't remember where."

However, based on B.G.'s other testimony cited above, we conclude that there was sufficient evidence that could support a finding that Gustafson touched B.G.'s pubic area with his hand.

The state concedes that there was no evidence presented that could support a finding that Gustafson touched B.G.'s pubic area with his mouth. However, even if the trial court erred in including in the jury instructions the alternative that sexual contact included intentional touching of B.G.'s pubic area with the defendant's mouth, the error was not prejudicial. As noted above, the trial court instructed the jury that sexual contact included intentional touching of B.G.'s breasts or pubic area with the defendant's hand, or mouth. Although no evidence was presented that Gustafson touched B.G.'s pubic area with his mouth, evidence was introduced that Gustafson touched B.G.'s breasts with his hand and mouth and touched her pubic area with his hand. Because there was no testimony or evidence presented to indicate that Gustafson touched B.G.'s pubic area with his mouth, nor did anyone claim that such an act occurred, it is highly improbable, if not inconceivable, that the jury would find Gustafson guilty of second-degree sexual assault on the basis that he touched B.G.'s pubic area with his mouth. Therefore, there was no prejudicial error, and Gustafson is not entitled to a reversal and a new trial on the basis of this alleged error in the jury instructions.

In conclusion, this court holds that it was error to admit evidence of R.G.'s juvenile adjudication and no contest plea at Gustafson's trial. The majority of this court also holds that the court of appeals' decision affirming Gustafson's conviction must be reversed and the case re-

manded for a new trial at which any evidence relating to R.G.'s juvenile adjudication and no contest plea may not be admitted into evidence.

*By the Court.*—The decision of the court of appeals is reversed and cause remanded.

CALLOW, J., dissents.

SHIRLEY S. ABRAHAMSON, J. (concurring). I join Justice Bablitch and Chief Justice Heffernan in their holding at the majority opinion, pp. 693–694, n. 4, that the defendant's conviction must be reversed inasmuch as the defendant's constitutional rights were violated by the circuit court's failure to instruct the jurors on the need to agree as to the commission of a particular act in order to reach a unanimous verdict.

I agree with the majority opinion that the circuit court erred in admitting evidence of the juvenile adjudication and the evidence of the no contest plea. I do not join the remainder of the opinion on this issue, because I find that the discussion of plain error, harmless error, and prejudicial error fails to clarify an area of law that continues to create confusion.

LOUIS J. CECI, J. (concurring). Although I agree with the result of this case, I write separately because I disagree with the majority's conclusion regarding the admission of R.G.'s no contest plea. This is because I believe that the introduction of R.G.'s no contest plea following his juvenile adjudication was clearly plain error and deprived James Gustafson of a fair trial.

The majority opinion conceded the following two points: (1) That R.G.'s no contest plea was not an admission (p. 687) and (2) that R.G.'s no contest plea was irrelevant to James Gustafson's trial (p. 689).

I agree with these two concessions. However, the majority then concludes that the admission of the plea was

*not* prejudicial. I disagree with this conclusion. This is because the jury was, in essence, told that the plea was an admission and was relevant to the question of James Gustafson's guilt. Therefore, I cannot fathom how the majority can conclude that the erroneous admission did not reach the level of plain error.

The majority concedes that the district attorney incorrectly characterized R.G.'s plea as an admission of guilt by his statement that the no contest plea was "essentially admitting [that R.G.] had done what [he was] charged with."[1] As I noted above, the majority also concludes that the evidence of this plea was irrelevant. However, the jury received the following instruction from the trial judge at the conclusion of the trial:

"In weighing the evidence, you may take into account matters of your common knowledge and your observations and experience in the affairs of life." Wis. J I—Criminal 195 (1983).

Utilizing their common knowledge, the jury obviously had uppermost in their minds the old adage "like father, like son." Therefore, considering the nature of the father-son relationship and the fact that R.G. had admitted to sexually molesting C.Y. in the next room, the jury logically concluded that Gustafson must have been sexually molesting B.G. in the living room, or he would have stopped his son from molesting C.Y. This is evinced by the following question which the jury sent to the judge during their deliberations:

"Did [C.Y.] say that [R.G.] opened her blouse or molested her in the bathroom?"[2]

---

[1] The district attorney also referred to R.G.'s no contest plea in her closing argument as follows: "He did, however, testify that he admitted to the Court in his own proceeding that he had done what he was charged with."

[2] The record indicates the reporter read back the following testimony for the jurors:

This question clearly indicates that the jury obviously considered R.G.'s "guilty plea" highly relevant to the question of James Gustafson's guilt or innocence. I cannot visualize a reasonable jury reaching any other conclusion.

One cannot expect a jury to make a distinction between what they were told took place between the son and a young woman and what they were to determine occurred between the son's father and another young woman, especially when both incidents occurred at the same time and in the same location. As this court noted in *State v. Sonnenberg,* 117 Wis. 2d 159, 178, 344 N.W.2d 95 (1984),

> "The court of appeals put its finger on why the error was harmless when it pointed out that the two incidents were so dissimilar that it could hardly be said that the erroneously admitted testimony in respect to Herman was prejudicial to the defendant. It pointed out the remoteness in time between the two incidents. In short, the court of appeals concluded that the testimony of Cathy Herman was not highly prejudicial, likely to cause a jury to want to punish the defendant . . . ."

In this case, there is no question that the two incidents involving James Gustafson and his son could be considered remote, since they occurred simultaneously. Also, there is the added factor, missing in *Sonnenberg,* that the jury may have wished to punish James Gustafson for allowing his son to behave in such a manner as R.G. had "admitted

---

"REPORTER:

'Question: Did either [R.G.] or Mr. Gustafson also go to the bathroom immediately?

'Answer: [R.G.] did.

'Question: What happened next?

'Answer: We were in there and for about ten minutes and then Mr. Gustafson came in and grabbed B.G. out by the arm.

'Question: What happened next to you?

'Answer: [R.G.] started trying to go up my shirt and, and I guess that's all.' "

to" concerning C.Y. This amounts to a denial of due process.

Clearly, this erroneously admitted "guilty plea" was highly prejudicial, in fact, inflammatory. Admission of the evidence of R.G.'s "guilty plea" without any cautionary instruction "substantially affected the defendant's right to a fair trial." *McClelland v. State,* 84 Wis. 2d 145, 162, 267 N.W.2d 843 (1978). This constitutes plain error and mandates a reversal. Reversal is required when it appears that the result might probably have been more favorable to the complaining party had this error not occurred. *State v. Sonnenberg,* 117 Wis. 2d at 179, citing *Wold v. State,* 57 Wis. 2d 344, 356–57, 204 N.W.2d 482 (1973). There is no question in my mind that a reasonable probability of a more favorable result exists had this error not occurred, based upon the inconsistency in B.G.'s testimony before and at trial.[3] Accordingly, I would find that plain error resulted because of the prejudicial effect resulting from the introduction of R.G.'s no contest plea, which was presented to the jury by the state as a guilty plea, and thus deprived the defendant of a fair trial. Therefore, I would require a new trial because of this error. Concerning the issue of whether Gustafson's right to a unanimous jury verdict was violated, I agree with the majority that *State v. Lomagro,* 113 Wis. 2d 582, 335 N.W.2d 583 (1983), is applicable to this case and that *Lomagro* should not be overruled.

STEINMETZ, J. (dissenting). In analyzing *Virgil v. State,* 84 Wis. 2d 166, 267 N.W.2d 852 (1978), and *State*

---

[3] Because the resolution of this case turned on the jury's acceptance of one witness's credibility over the other, namely, B.G.'s over the defendant's, the fact that C.Y. testified that she and B.G. had met prior to the preliminary hearing and agreed upon certain facts they would lie about may have influenced the jury to disregard B.G.'s testimony without R.G.'s highly prejudicial "guilty plea."

*v. Sonnenberg,* 117 Wis. 2d 159, 344 N.W.2d 95 (1984), including Chief Justice Beilfuss's concurring opinion in *Virgil,* it appears that the plain error rule should only be examined if the evidence complained about was not objected to at trial. The application of it should be used sparingly by the terms of sec. 901.03(4), Stats., "and only in cases . . . where a basic constitutional right has not been extended to the accused." *Virgil,* 84 Wis. 2d at 195, C.J. Beilfuss concurring.

"The rule focuses on whether the error is 'plain' and whether it affects 'substantial rights.' As such, the rule serves a different purpose than the 'interest of justice' rule contained in sec. 251.09, Stats. [now sec. 751.06] Unlike sec. 251.09, the plain-error rule does not implicate issues such as miscarriage of justice or probable different result on retrial. *See, Pappas v. Jack O.A. Nelsen Agency, Inc.,* 81 Wis. 2d 363, 375, 260 N.W.2d 721 (1978)." *Virgil,* 84 Wis. 2d at 189–90, n. 2.

" 'Harmless error' is error raised at trial but found not to affect substantial rights. 'Prejudicial' or 'reversible' error is error raised at trial which is found to affect substantial rights. 'Plain error' is error not raised at trial, but nevertheless considered by a reviewing court, which is found to affect substantial rights. The distinction between harmless and reversible error thus turns on whether substantial rights are affected, and the distinction between harmless and plain error on whether the particular error in the case at hand excuses the party's failure to bring it properly to the trial court's attention." Weinstein and Berger, Weinstein's Evidence, Vol. 1, at 103–6 to 103–7.

In *Virgil,* this court held that the defendant's conviction had been obtained through· a violation of his confrontation rights under both the United States and the Wisconsin Constitutions. We stated:

"This violation of the defendant's constitutional rights is so serious, viewed in the context of the other evidence properly admitted in this case, that we conclude that the

admission of the evidence constitutes plain error, requiring a reversal of the conviction.

"The needs of our system of justice also bolster our view that the conviction must be reversed. A trial conducted in violation of the defendant's confrontation rights is a trial that flouts fundamental concepts of justice basic to our system. Where a defendant is convicted in a way inconsistent with the fairness and integrity of judicial proceedings, then the courts should invoke the plain-error rule in order to protect their own public reputation. *United States v. Vaughan,* 443 F.2d 92, 95 (2d Cir. 1971)." 84 Wis. 2d at 192.

In *Sonnenberg,* we found no denial of any fundamental constitutional right nor a substantial impairment of the right of a fair trial. 117 Wis. 2d at 178. Therefore, we applied the harmless error test of *Wold v. State,* 57 Wis. 2d 344, 356–57, 204 N.W.2d 482 (1973). We concluded in *Sonnenberg:* "[T]here was sufficient evidence independent of and uninfluenced by Cathy Herman's testimony to have permitted the jury to reach the conclusion that the defendant was guilty beyond a reasonable doubt." 117 Wis. 2d at 180.

As stated in *Virgil:* "[P]lain error on its face is *ipso facto* prejudicial; and once plain error is determined, no inquiry in respect to whether it is prejudicial is necessary or permissible." 84 Wis. 2d at 190. We did not change this ruling in *Sonnenberg.* In that case we found plain error did not take place during the trial. Justice Ceci's concurring opinion cites to *Sonnenberg,* 117 Wis. 2d at 179, and states: "Reversal is required when it appears that the result might probably have been more favorable to the complaining party had this error not occurred." Reliance on the foregoing test is not consistent with the concurring opinion's finding the error was plain error.

The test for plain error was not met since the introduction of the defendant's son's no contest plea did not deny the defendant a basic constitutional right. *See, Sonnenberg,* 117 Wis. 2d at 178.

In the instant case after considering all of the evidence, I do not find plain error and under the total circumstances of the case, find the error was harmless. In addition, I would not, as three members of this court conclude, overrule *Lomagro*. I would, therefore, affirm the court of appeals since I would not grant this defendant a new trial.

I am authorized to state that JUSTICE ROLAND B. DAY joins in this dissenting opinion.