STATE of Wisconsin, Plaintiff-Respondent,

v.

James R. GUSTAFSON, Defendant-Appellant-Petitioner.

Supreme Court

No. 81–2015–CR. Argued November 1, 1984.—
Decided January 3, 1985.

(Also reported in 359 N.W.2d 920.)

For the plaintiff-respondent, on reconsideration, the cause was argued by *Stephen W. Kleinmaier,* assistant attorney general, with whom on the briefs was *Bronson C. La Follette,* attorney general.

For the defendant-appellant-petitioner, on reconsideration, there was a brief and oral argument by *Louis Butler, Jr.,* assistant state public defender.

PER CURIAM. *(On motion for reconsideration.)* This is a reconsideration of our decision in *State v. Gustafson,* 119 Wis. 2d 676, 350 N.W.2d 653 (1984), which reversed Gustafson's conviction of two counts of second-degree sexual assault and remanded the case for a new trial. We now modify our prior decision and affirm

Gustafson's conviction because the majority failed to agree on one specific ground of error fatal to the judgment of conviction.

Gustafson was tried and convicted in the circuit court for Manitowoc county. During trial, Gustafson's minor son, R.G., was called as a witness on Gustafson's behalf. On appeal, Gustafson argued that the trial court erred by allowing into evidence testimony that R.G. had entered a plea of no contest in juvenile court and had been judged delinquent on charges stemming from the same incident that resulted in one of the charges against Gustafson. Despite the failure of Gustafson's attorney to raise a specific objection to the admissibility of evidence of R.G.'s delinquency adjudication and no contest plea, this court held the admission of the evidence to be error but, by a five-to-one vote, held that the error was not plain error. Justice Ceci cast the one vote for plain error.

Gustafson also argued on appeal that, because evidence was presented on one of the counts indicating that he had committed more than one act of sexual contact with a minor female, the trial court erred in not instructing the jury that it had to unanimously agree on a specific act he committed. By a four-to-three vote, this court held that Gustafson had not been denied his right to due process and to a unanimous jury verdict by the trial court's failure to give a specific unanimity instruction. On this issue, Chief Justice Heffernan, Justice Bablitch, and Justice Abrahamson found error warranting a new trial.

Pooling the one justice's vote for plain error in the admission of evidence of R.G.'s juvenile adjudication and no contest plea and the three other justices' votes for a new trial on the basis of the trial court's failure to give a specific unanimity instruction, this court arrived at a four-member court majority in favor of re-

versal of Gustafson's conviction and a remand for a new trial.

The issue presented for reconsideration is whether it is appropriate to order a new trial when a majority of the court concludes that there is prejudicial error, but there is no majority with respect to a particular error. We adhere to the decision in *Will of McNaughton,* 138 Wis. 179, 118 N.W. 997, 120 N.W. 288 (1909), holding that a majority must agree on some one specific ground of error fatal to the judgment, or the judgment must be affirmed.[1] Therefore, because as to each specific error in this case this court found no prejudicial error, reversal was inappropriate, and Gustafson's conviction must be affirmed.

We recognize that the United States Supreme Court and courts in other jurisdictions have adopted the approach that even when there is no majority as to a particular ground for reversal, reversal is still required if the minorities unite and constitute a majority of the court. In *Smith v. United States,* 30 U.S. (5 Pet.) 292, 303 (1831), the Supreme Court stated,

> "Although on each of the principal objections relied on as showing error in the proceedings of the district court, a majority of the members of this court think there is no error; yet the judgment of the district court must be reversed, as on the question of reversal, the minorities unite, and constitute a majority of the court."[2]

[1] *See also, Grogan v. Wisconsin Sugar Co.,* 156 Wis. 406, 146 N.W. 491 (1914), and *Harland v. Wisconsin Sugar Co.,* 156 Wis. 407, 146 N.W. 492 (1914).

[2] This practice has been continued by the Supreme Court in, among other cases, *National Mutual Insurance Co. v. Tidewater Transfer Co.,* 337 U.S. 582 (1949); *Giles v. Maryland,* 386 U.S. 66 (1967); and *Elrod v. Burns,* 427 U.S. 347 (1976). Other state jurisdictions have also accepted the standard: *Commonwealth v. Jones,* 475 Pa. 95, 379 A.2d 1055 (1977); *Pollard v. Hill,* 447 S.W.2d 777 (Mo. Ct. App. 1969); and *State v. Beck,* 59 S.D. 207, 239 N.W. 184 (1931).

The rule applied in *Smith* was expressly rejected in 1909 in *McNaughton,* 138 Wis. 179, and the reasons for its rejection remain valid today.

Justice Marshall, in writing the *McNaughton* decision, expressed the court's concern that "[i]f the rule contended for were to prevail, a jury case could never be terminated . . . ." 138 Wis. at 214. Under the reasoning in *McNaughton,* acceptance of minority vote pooling would result in reversals without adequate guidance to the trial court upon a new hearing. As to each assigned error, the majority of the court would have indicated to the trial court that it had acted correctly. Subsequently, upon remand the trial judge would be free to make the same rulings, and the identical controversy could potentially be appealed and remanded *ad infinitum.* There is no benefit in holding a new trial when the procedure used in the first trial would not differ from that in the new one.

Further, justification for the rejection of minority vote pooling rests on the court's desire to avoid the arbitrary and illogical results possible under the application of such a rule. Minority vote pooling is arbitrary in that the outcome of the case is dependent not on the majority vote of the court, but on the identities of the individual justices casting a minority vote on each issue. Only the minority votes of different members of the court are totaled in an attempt to gain a majority. This results in a situation where the same vote totals could exist on each issue, but, depending upon which justices voted in the minority on each issue, the outcome could differ. Under the *McNaughton* rule, no such inconsistency exists, for it matters not which individual justice votes the majority or minority position. Rather, the outcome is determined consistently by a determination of the numerical majority of the court on each issue.

The potential illogic of minority vote pooling was clearly illustrated by an example given in *McNaughton*, 138 Wis. at 211–12. Under minority vote pooling where four issues are presented to the court, the court could decide by six votes to one that no error occurred as to each issue, but if the single votes came from four different justices, the case would be reversed. As Justice Marshall stated, "It would be hardly possible to think of anything more absurd." *Id.*, 138 Wis. at 212.

Finally, a rule that would allow individual justices to pool their minority votes and award a new trial, in the face of the court's determination that there was no prejudicial error, would have the effect of elevating the individual justices to a position above the court. This evidences a misunderstanding of the concept of a collegial appellate court. The power to render decisions rests with this court, not in the individual justices, and we therefore specifically reject such a pooling of minority votes to award a new trial.

We recognize that if this case were to be retried, the evidence of R.G.'s delinquency adjudication and no contest plea would not be admissible. However, this court as a whole ruled that this error was not plain error. Also, with respect to the unanimity issue, the lower court upon remand would have been faced with no guidance. This court, by a majority vote, held that Gustafson was not denied due process by the trial court's failure to give the unanimity instruction. It was this court's determination that no prejudicial error occurred at trial, and we hold that it was error to grant Gustafson a new trial under those circumstances.

In conclusion, the conviction for both counts of second-degree sexual assault has been affirmed, and, therefore, we need not reach the second issue of whether this court should affirm the conviction for the second-

degree sexual assault of C.Y. if we reverse the conviction for the second-degree sexual assault of B.G.

Accordingly, on reconsideration our prior opinion and mandate are modified as set forth above, and the decision of the court of appeals is, therefore, affirmed.

SHIRLEY S. ABRAHAMSON, J. (dissenting). I would not modify our prior mandate. On reconsideration of our prior opinion and mandate, I conclude that the mandate is correct: Gustafson's conviction for sexual assault of B.G. should be reversed and the cause remanded for a new trial.[1]

Four justices—a majority of this court—agreed initially and agree on reconsideration that the conviction should be reversed because the trial was infected by prejudicial error. Four justices agree that the trial, viewed as a whole, did not pass muster and that the defendant was denied a fair trial. They do not agree as to the grounds of reversal, but they agree on reversal.

Three justices—a minority of this court—conclude that the conviction should be affirmed. As a result of the decision rendered today, the case is disposed of in conformity with the wishes of a minority of three.

According to the decision today, unless a majority of the justices agree as to a particular prejudicial error, the trial court's judgment of conviction must be affirmed. I do not believe that we can let this criminal conviction stand when a majority of the court has voted that the conviction is so defective as to require reversal.

---

[1] The defendant asks that Gustafson's conviction for sexual assault of C.Y. be reversed. I would affirm that conviction. The "fragmentation" issue does not arise in that conviction; the majority of the justices agreed that Gustafson's conviction for the second degree sexual assault of C.Y. should be affirmed. I am not persuaded that the prejudicial errors in the count involving B.G. spilled over to the C.Y. count.

The majority's reliance on *Will of McNaughton,* 138 Wis. 179, 118 N.W. 997, 120 N.W. 288 (1909), is misplaced. *McNaughton* can be distinguished. That case, unlike this one, is a civil case. While I might on further reflection conclude that the civil-criminal distinction is artificial, I am persuaded that in a criminal case in which a liberty interest in involved and the government is using its power against the individual, greater care must be taken to safeguard the individual's rights. Considering the public's interests in convicting guilty persons and in assuring everyone a fair trial, I conclude that this case demands a reversal. A reversal of the conviction does not mean the defendant goes free; it means he is retried and erroneous evidence can not be considered by the jury.

Furthermore, the *McNaughton* opinion emphasized that if the judgment were reversed there would be no guidance to the trial court, the second trial would proceed exactly as the first trial, and on appeal the appellate court would again be divided. In that case as a result of the fragmentation of the court "a jury case could never be terminated." *McNaughton, supra,* 138 Wis. at 214, quoted at p. 462, *supra.* In this case there *is* guidance for the trial court, and the case can be terminated. Four justices agreed that the instructions were proper; six justices agreed that the admission of certain evidence was error. We do not know Justice Callow's position on the evidence since he dissented without opinion; his dissent could be interpreted to mean that the admission of the evidence was not error. On retrial this evidence would be omitted. If the second trial, without this evidence, resulted in a conviction, the conviction would be affirmed by this court on a 4–3 vote: the three justices objecting on the unanimity issue might continue to vote to reverse the conviction;

Justice Ceci would change his vote from reversal to affirmance because the error was eliminated.

Even if the court is not willing to adopt as a general practice the United States Supreme Court's practice of deciding reversal or affirmance by pooling the votes of the justices, the *McNaughton* rule with its emphasis on the lack of guidance is not applicable in this case.

I conclude that considerations of due process under both the federal and state constitutions require this court to reverse this judgment of conviction because a majority of the justices—albeit for diverse reasons—supports that disposition of the case and provides guidance for the trial court on a new trial. The bottom line question for the appellate court in most criminal cases is whether to affirm or reverse the conviction. The due process basic concept of fairness should mean, at a minimum, that the defendant's challenge to an adjudication of guilt be decided consistent with the majority vote.[2]

---

[2] Furthermore, there is something "fundamentally unfair for a court majority to declare, on the one hand, that there was unfairness below, but to refuse, on the other hand, to do anything about it." Leonard, *The Correctness Function of Appellate Decision-Making: Judicial Obligation in an Era of Fragmentation*, 17 Loyola L.A.L. Rev. 299 (1984).

Professor Leonard argues that this due process argument comports with the general understanding of the function of an appellate court. Once the court decides that a case fits its criteria for review and takes the case, the court has a dual function: 1) to guard the rights of the litigants, and 2) to set forth the law applicable to the case for the guidance of litigants, lawyers and the courts. Once the court decides to review a case, Professor Leonard believes the function of explicating the law is subservient to the function of deciding the case to guard the rights of the litigants. If it were not, the appellate court would be empowered to render advisory opinions. Professor Leonard would apparently conclude that a reversal was required in this case even if the initial opinions did not provide guidance for the trial court.

For the reasons set forth I would affirm our initial mandate.

I am authorized to state that CHIEF JUSTICE NATHAN S. HEFFERNAN and JUSTICE WILLIAM A. BABLITCH join in this dissent.