STATE of Wisconsin, Plaintiff-Respondent,†

v.

Harrison M. MARCUM, Defendant-Appellant.

Court of Appeals

*No. 91-0592-CR. Oral argument October 8, 1991.—Decided January 22, 1992.*

(Also reported in 480 N.W.2d 545.)

†Petition to review denied.

█

On behalf of the defendant-appellant, there were briefs and oral argument by *Marla J. Stephens,* assistant state public defender.

On behalf of the plaintiff-respondent, there were briefs by *James E. Doyle,* attorney general, and *Jerome S. Schmidt,* assistant attorney general. There was oral argument by *Jerome S. Schmidt,* assistant attorney general.

Before Nettesheim, P.J., Brown and Anderson, JJ.

BROWN, J. Harrison M. Marcum appeals two convictions of sexually assaulting his stepdaughter, C.O. We reverse one of the convictions because the verdict was so unspecific as to violate Marcum's sixth amendment right to a unanimous verdict and his fifth amendment due process right to verdict specificity. We do this on ineffective assistance of counsel grounds for failure to object to the final verdict forms. We affirm the other conviction.

The facts relating to the reversal will be stated first. The complaint charged Marcum with two counts, alleging one event in August 1989 and one in September 1989. Even so, the complaint alleged that Marcum committed hand-to-vagina, hand-to-breast, and penis-to-vagina contact twice in August and twice in September. The complaint also stated that sometimes there was penis-to-mouth contact.

At the preliminary hearing, C.O. related two September incidents. On the first occasion, there was hand-

to-vagina contact; on the second, there was both penis-to-vagina and penis-to-mouth contact. The subsequent information charged Marcum with six counts. Counts four, five, and six related to the September incidents. The three September counts obviously tracked C.O.'s preliminary hearing testimony alleging three different forms of sexual contact having taken place during the two September occasions.

Identical wording was used in each of the six counts, except for the month and year. Counts four, five, and six were worded in the following manner:

> [The defendant did] in September 1989 feloniously have sexual contact with a person who has not attained the age of 13 years, to wit, C.O. a juvenile female whose date of birth is 2/4/79; said conduct by the defendant being contrary to Section 948.02(1), Wisconsin Statutes.

The trial testimony was not altogether consistent with the preliminary hearing testimony. There was confusion, for instance, about how many occurrences took place in September. The September incidents were sometimes described as occurring on two days and at other times as occurring on three days. Occasionally, there was also an inference that the September incidents occurred on one day, since they were described simply as the "last time" sexual contact occurred.

As another illustration, there was also confusion about what acts took place and on which occasion. In the opening statement to the jury, the prosecutor described the sexual contact in September as taking place on one afternoon. This was referred to as the "last time" and was described as the time in which hand-to-vagina, hand-to-breast and penis-to-vagina contact occurred.

However, when C.O. testified about the "last time," she said that there was only hand-to-vagina contact over her clothes. The prosecutor then began to read from the preliminary hearing testimony. The defense attorney objected and the court ruled that, rather than a narrative, the prosecutor must ask C.O. "each series of questions."

The prosecutor then asked C.O. whether Marcum made her touch his penis with her hand or mouth in September. C.O. said that he did. However, C.O. again said that during the "last time," only hand-to-vagina contact over her clothes occurred.

The prosecutor then introduced C.O.'s original signed statement through the testimony of a detective. The statement was basically similar to what was alleged in the complaint—mainly, that three acts occurred during the "last time" in September: hand-to-vagina, hand-to-breast, and penis-to-vagina contact. The statement went on to allege that this occurred two times in August and two times in September. It also alleged, without specifying a date, that penis-to-hand and mouth contact also took place.

Tracking C.O.'s statement, the prosecutor's closing argument described hand-to-vagina, hand-to-breast, and penis-to-vagina contact as having occurred during the "last time." The prosecutor told the jury that "two counts arise out of that." The prosecutor then described hand-to-vagina contact and, curiously, penis-to-mouth contact.

At the instructions conference, Marcum's attorney stated that the proposed identical verdicts needed specification as to the time frame. He expressed concern that "the jury will not know what or recall what count 1, 2, 3, 4, 5, 6 is in their deliberations." The court agreed to change the wording of the verdicts to include the lan-

914

guage about the dates for each count "as set forth in the information." Marcum's attorney accepted the change. The verdict forms for counts four, five, and six were identically worded as follows:

> We the jury find the defendant, Harrison M. Marcum, [guilty/not guilty] of having sexual contact with [C.O.], a juvenile female whose date of birth is 2/4/79, in September of 1989, as set forth in Count [Four/Five/Six] of the information.

The jury returned a guilty verdict on count six and not guilty on counts four and five.[1] A postconviction motion alleging unanimity problems was denied by the trial court on the ground that the three counts in September involved "conceptually similar acts."

Marcum's appeal rests on claimed errors in the jury instructions and verdict. We cannot review whether the trial court erred in giving instructions and verdict forms, however, because Marcum did not raise an adequate objection. Concerning the instructions, Marcum's attorney explicitly stated that he agreed with the proposed substantive jury instructions. One of these instructions was the standard jury instruction on unanimity. Concerning the proposed verdicts, it is true that Marcum's attorney initially expressed concern that the verdicts were not specific as to date or time frame. Yet, after the trial court inserted the month and year into each count, Marcum's attorney did not seek to distinguish the identical counts. He never phrased his objection in terms of a failure of the verdict forms to specify what particular act went with what verdict.

---

[1] The jury also returned a guilty verdict on count one—the August incident. This count is not relevant to the unanimity issue.

In *State v. Schumacher,* 144 Wis. 2d 388, 409, 424 N.W.2d 672, 680 (1988), our supreme court ruled that the court of appeals is prohibited from reviewing instructions and verdict forms absent a timely objection by the defendant. Because there was no timely objection, we will not review the instructions or the verdict forms in the context of whether the trial court erred.[2]

The *Schumacher* court, however, also held that the instructions and verdict forms may be revisited under claims of ineffective assistance of counsel or if the claimed error is reviewable under sec. 752.35, Stats., as a miscarriage of justice or as a failure to try the real controversy. *Schumacher,* 144 Wis. 2d at 408 and n.14, 424 N.W.2d at 680. Marcum argues both ineffective assistance of counsel and a right of review under sec. 752.35. We will discuss only the ineffective assistance of counsel argument.

The two-pronged test for ineffective assistance of counsel is deficient performance of counsel and prejudice to the defendant. *Strickland v. Washington,* 466 U.S. 668, 687 (1984); *State v. Pitsch,* 124 Wis. 2d 628, 633,

---

[2]Marcum argues that the "right to a unanimous verdict is so fundamental that it cannot be waived." *State v. Koput,* 134 Wis. 2d 195, 204, 396 N.W.2d 773, 777 (Ct. App. 1986), *rev'd,* 142 Wis. 2d 370, 418 N.W.2d 804 (1988). He asserts that this is an exception to *State v. Schumacher,* 144 Wis. 2d 388, 424 N.W.2d 672 (1988). While the *Koput* court did make that statement and that statement was not expressly overruled by our supreme court, *Schumacher* puts the *Koput* statement in doubt, at least as far as the court of appeals review is concerned. We choose not to decide here whether the statement in *Koput* is a valid exception to *Schumacher.* That answer is better left to the supreme court. We feel bound by the broad proscription announced in *Schumacher.*

369 N.W.2d 711, 714 (1985). The test for the performance prong is whether counsel's assistance was reasonable under the facts of the particular case, viewed as of the time of counsel's conduct. *Pitsch* at 636–37, 369 N.W.2d at 716. In making that determination, we must keep in mind that counsel's function is to make the adversarial testing process work in the particular case. *Id.*

The test for the prejudice prong is whether counsel's errors deprived the defendant of a fair trial, a trial whose result is reliable. *Id.* at 640–41, 369 N.W.2d at 718. Contrary to the state's assertion, this is not an outcome determinative standard. *Id.* at 642, 369 N.W.2d at 718. The ultimate focus of inquiry must be on the fundamental fairness of the proceeding whose result is being challenged. *Id.* at 642, 369 N.W.2d at 719. Our concern must be whether there was a breakdown in the adversarial process that our system counts on to produce just results. *Id.* Even where the evidence is sufficient to sustain the conviction, when a defendant's constitutional rights are violated because of counsel's deficient performance, the adversarial process breaks down and our confidence in the outcome is undermined. *Id.* at 645–46, 369 N.W.2d at 720.

We turn to the initial question of whether counsel's performance was deficient. Marcum first asserts that counsel failed to object to the standard instruction on unanimity given in this case.

The trial court gave the jury the following standard instruction on unanimity:

> This is a criminal, not a civil case. Therefore, before the jury may return a verdict which may be legally received, such verdict must be received [sic] unani-

mously. In a criminal case all 12 jurors must agree in order to arrive at a verdict.

*See* Wis J I—Criminal 515. There was no request for a different instruction on unanimity. Nor is there any other standard jury instruction which would have been applicable to this case.[3]

We acknowledge that any unanimity problem could have been avoided by an instruction telling the jurors that they must be unanimous about the specific act that formed the basis for each count. *See State v. Gustafson,* 112 Wis. 2d 369, 379, 332 N.W.2d 848, 852-53 (Ct. App. 1983). And, if the conduct involves separate transactions and separate crimes, the court must then instruct the jury that unanimity is required as to each. *State v. Gustafson,* 119 Wis. 2d 676, 697, 350 N.W.2d 653, 663 (1984), *modified,* 121 Wis. 2d 459, 359 N.W.2d 920, *cert. denied,* 471 U.S. 1056 (1985). When viewing counsel's failure to object to the standard instruction *in isolation,* however, we cannot say that counsel's conduct was ineffective. So long as the *verdict* properly focuses the jury as to what facts occurred in what slice of time, there would be no prejudice. When the failure to object to the

---

[3]The only other standard jury instruction related to the unanimity requirement is Wis J I—Criminal 517. However, that instruction is appropriate only where there is one charge but evidence of multiple acts were introduced to support the one charge. Thus, it would not have been appropriate in Marcum's case because there were multiple charges. Moreover, Wis J I—Criminal 517 is an optional jury instruction. Failure to give that instruction in an appropriate case is not trial court error. *See State v. Gustafson,* 119 Wis. 2d 676, 350 N.W.2d 653 (1984), *modified,* 121 Wis. 2d 459, 359 N.W.2d 920, *cert. denied,* 471 U.S. 1056 (1985); *State v. Lomagro,* 113 Wis. 2d 582, 335 N.W.2d 583 (1983).

instruction is combined with counsel's further failure to pursue an objection to the verdict's lack of specificity, prejudice may result from that combined failure. We now address this claim.

Marcum asserts that the lack of specificity in the verdict forms deprived him of his constitutional right to a unanimous verdict and that counsel's performance was deficient in this respect. Here, we agree.

From the state of the record, we do not know which of the several alleged acts led to his conviction on count six. Nor do we know which acts the jury acquitted him of in counts four and five. Marcum claims that he does not know and the state, at oral argument, conceded that it does not know either. The state claims, however, that it is unnecessary for anyone to know. The state posits that the charge to the jury to be unanimous as to guilt translates into juror knowledge that they must be unanimous about which act the defendant is guilty of.

We cannot agree. In most cases involving multiple charging, no problem would arise from the use of the standard jury instruction because the defendant's illegal acts would be distinguished from each other in either the information or the verdict forms. In such cases, the information or verdict forms would force the jury to focus on the specific act or alternative forms of the same act. However, in the instant case, there was nothing to focus the jury on a specific act or alternative forms of a specific act. Nor does the unanimity instruction tell the jurors that they have to agree on which act forms the basis for their verdict. From this instruction, the jury would have known only that they had to be unanimous about Marcum's guilt or innocence of any criminal conduct in September. They would not have known that they had to be unanimous on the specific act for which he was guilty.

The standard instruction when applied to unspecific verdicts, as in this case, left the door open to the possibility of a fragmented or patchwork verdict. For instance, there was nothing to prevent three jurors from thinking there was hand-to-vagina contact, three thinking hand-to-breast contact, three thinking penis-to-vagina contact, and three thinking penis-to-mouth contact when they agreed to find him guilty of count six. Yet, those same acts could already have formed the basis for the jurors' agreement to find Marcum not guilty of counts four and five. Such an outcome would violate the due process requirement that the prosecution prove each essential element of the offense beyond a reasonable doubt. *Holland v. State,* 91 Wis. 2d 134, 138, 280 N.W.2d 288, 290 (1979), *cert. denied,* 445 U.S. 931 (1980). It is this which the unanimous jury requirement is designed to protect. *See id.*

The state asserts, however, that this lack of verdict specificity is inconsequential because jurors need not be unanimous on the exact act, so long as they are unanimous that alternative means were used to accomplish the sexual assault on the date and at the time alleged.

The state's assertion, which mirrors the trial court's rationale, merits extended discussion. Conceptual similarity and its sibling, "alternative means," are categories of analysis that deal with the potential problem of duplicity, especially when several acts of a defendant are charged as a continuing offense in one count. *See, e.g., United States v. Gipson,* 553 F.2d 453 (5th Cir. 1977); *State v. Gustafson,* 119 Wis. 2d 676, 350 N.W.2d 653 (1984), *modified,* 121 Wis. 2d 459, 359 N.W.2d 920, *cert. denied,* 471 U.S. 1056 (1985); *State v. Lomagro,* 113 Wis. 2d 582, 335 N.W.2d 583 (1983); *Manson v. State,* 101 Wis. 2d 413, 304 N.W.2d 729 (1981).

Our supreme court at times has treated illegal sexual acts as conceptually similar and at times as distinct. *Lomagro* and *Gustafson* treat the acts of illegal sexual conduct as conceptually similar enough to be charged in one count, while cases like *State v. Eisch,* 96 Wis. 2d 25, 34–36, 291 N.W.2d 800, 805 (1980), and *State v. Bergeron,* 162 Wis. 2d 521, 534–35, 470 N.W.2d 322, 327 (Ct. App. 1991), treat the acts as capable of being charged separately in distinct counts because they are separately enumerated by the legislature as acts that are different in nature.

The key to resolving this apparent inconsistency is not the analytical category of "conceptual similarity" but the category of "separate volitional acts." *See Eisch,* 96 Wis. 2d at 36, 291 N.W.2d at 805; *Bergeron,* 162 Wis. 2d at 535, 470 N.W.2d at 327. Where there is evidence of separate volitional acts of illegal sexual conduct, charging in separate counts is proper and does not pose a multiplicity problem. *See id.* In contrast, where there is evidence that several separately enumerated acts of illegal sexual conduct were committed as one volitional act, the legislature's separate enumeration in the statute simply represents alternative means of committing the crime, and charging the crime in one count as a continuing offense does not raise problems of duplicity. *See Gustafson,* 119 Wis. 2d at 695–96, 350 N.W.2d at 662–63; *Lomagro,* 113 Wis. 2d at 598, 335 N.W.2d at 592.

The relevance of this distinction to this case is that the prosecution's charging choice has implications for a defendant's right to verdict specificity and to a unanimous jury. Concerning unanimity, our supreme court has said that if the jury is asked to decide whether a defendant such as Marcum committed multiple crimes, una-

921

nimity is required as to each crime. *See Lomagro,* 113 Wis. 2d at 592, 335 N.W.2d at 589; *Gustafson,* 119 Wis. 2d at 695, 350 N.W.2d at 662. However, if the jury is presented with alternative means of committing one crime, unanimity is not required on the alternative means. *See id.* When a jury is presented with multiple charges, the multiple charges do not represent alternative means, no matter how conceptually similar the acts in the charges may be.

In the case at bar, the prosecution was charging both from the *Eisch* framework and from the *Gustafson* framework. It charged three separate acts in September. Having charged three separate acts, it was bound to prove a volitional act or alternative means of that volitional act with regard to each charge. It could not use the volitional act of one charge as an alternative means for a guilty verdict on another charge. However, the vague verdict forms, combined with the general unanimity instruction, would allow a jury to treat the separately charged acts as alternate means. This is unacceptable. The alternative means can be used under the law to prove the one act charged; the alternative means cannot cross back and forth among charges to apply to multiple volitional acts.

Therefore, as the record stands, no one knows if count six stood for the "last time" and the three alternative means of having assaulted C.O. that last time; or if count six was viewed by the jury to be one of the volitional acts that occurred on the "last time," while counts four and five were considered to relate to other volitional acts alleged to have occurred during the "last time," or whether count six referred to the first time in September, and counts four and five referred to the "last time." We could go on. The point is, the jury was not told that

it had to be specific about a volitional act; only whether Marcum was guilty. But guilty of what and when? The jury was not asked to be this specific, and from a constitutional perspective, this is a must.

A corollary to the well-established principles of unanimity is that in a case such as this, the jury must be presented with verdict forms that adequately distinguish each separately charged crime. If identical verdict forms are to be permitted for crimes also identically charged, the right to a unanimous jury would be meaningless. As Marcum argues, the prosecution would be able to "have its cake and eat it too." The prosecution could charge the defendant with separate counts (as in *Eisch),* arguing that there was no multiplicity problem because the defendant committed separate volitional acts. Yet, the vague verdict forms, combined with the general unanimity instruction, would allow the jury to treat the separately charged acts as alternative means, an inappropriate use of the analysis in *Gustafson.* The jury was never told they could not do this.

This is not only a sixth amendment unanimity problem, it is also a fifth amendment due process problem. Perhaps nothing is more fundamental to the adversarial process than notice of the conduct for which one is convicted of criminal wrongdoing. In a case cited to us by the state, the United States Supreme Court wrote:

> [I]t is an assumption of our system of criminal justice "so rooted in the traditions and conscience of our people as to be ranked as fundamental," that no person may be punished criminally save upon proof of some specific illegal conduct. Just as the requisite specificity of the charge may not be compromised by the joining of separate offenses, nothing in our his-

tory suggests that the Due Process Clause would permit a State to convict anyone under a charge of "Crime" so generic that any combination of jury findings . . . would suffice for conviction.

*Schad v. Arizona,* 111 S. Ct. 2491, 2497–98 (1991) (citations omitted). We conclude that Marcum's due process rights were violated by the lack of verdict specificity. *Schad* called this a due process right. That is what we have here. The verdicts are so "generic" that any combination of jury findings can suffice for conviction.

We conclude that the performance of Marcum's trial counsel was deficient. The objection made by counsel at the instructions conference to lack of time frame in the proposed verdicts indicated that counsel understood the problem the verdicts posed for Marcum. However, after the trial court offered to insert the month and year into each verdict, counsel raised no further objection. Yet the inserting of the general time frame did not solve the problem with the verdicts. The month and year served to distinguish count one from the other five counts and to distinguish counts two and three from counts four, five, and six. However, the dates did not serve to distinguish the three counts related to the acts alleged in September. It was deficient on these facts for counsel not to see that the trial court's proposed solution failed to solve the verdict problem counsel originally posed.

We fail to understand why counsel did not raise further objection to the verdict forms. Counsel was quite vigilant during trial in objecting to any lack of clarity regarding which count was at issue during the prosecutor's questioning of C.O. about the incidents that occurred in September. However, at the instructions conference, counsel failed to follow through on his initial

objection to the verdict forms. Therefore, we conclude that counsel's performance was deficient.

It was also prejudicial. Not only is Marcum prejudiced by not knowing what act he stands convicted of, he is also prejudiced by the very real possibility of his guilt having been found based on facts that were part of a volitional act for which the jury also found him not guilty.

Part of our problem is that we cannot reverse and remand for a new trial on count six because we do not know what acts were included in the not guilty verdicts of counts four and five. We cannot order a new trial because Marcum might be retried for acts on which the jury has already adjudged him not guilty. Therefore, we remand to the trial court with directions to enter a judgment of dismissal with prejudice regarding count six.

We now reach the issues relating to Marcum's conviction on count one.

Marcum claims ineffective assistance of counsel during trial, requiring reversal of the conviction on count one, for the following three reasons. First, he claims that counsel failed to respond in a timely manner to a school counselor's testimony that Marcum had been in prison. Second, he claims that counsel failed to object when a sexual assault counselor at the hospital and an emergency room doctor testified about C.O.'s credibility. Third, he claims that counsel failed to interview C.O. prior to trial to elicit available testimony concerning C.O.'s motive to lie. In addition to arguing ineffective assistance of counsel, Marcum also argues that the real controversy has not been fully tried. After the trial was over, C.O. recanted her accusations.

We do not repeat the tests for ineffective assistance of counsel which we recited above. Regarding each of

Marcum's claims, we conclude that the performance of counsel was not deficient, or, even if it was deficient, it did not prejudice Marcum.

When C.O.'s school counselor testified during the middle of a long narrative that Marcum had been in prison, Marcum's counsel did not immediately object. In fact, counsel waited a few more minutes until the prosecution completed its questioning of the witness. Then Marcum's counsel asked for a recess and a conference with the court before cross-examination. At the conference, counsel moved for a mistrial for several reasons, including the introduction of the prison testimony. The next day, the trial court denied the motion for mistrial stating that counsel had waived objection to the prison testimony. The court offered counsel the opportunity for a curative jury instruction. Counsel refused such an instruction at the instructions conference.

The trial court's finding of waiver was not clearly erroneous. Additionally, waiver does not indicate that defense counsel's performance was deficient. Counsel stated at trial and testified at the postconviction hearing that he decided not to object when the testimony was offered but to wait until he could make the objection without drawing the jury's attention to the testimony. As the trial court concluded, this was a strategic decision that fell within the range of competent assistance of counsel. *See State v. Felton,* 110 Wis. 2d 485, 502, 329 N.W.2d 161, 169 (1983).

Moreover, even if this did not constitute competent assistance, Marcum was not prejudiced. As the trial court noted, the jury's acquittal of Marcum on four counts shows that "the jury was not so prejudiced by the improper information that it controlled their deliberative process."

Concerning the testimony by the hospital's sexual assault counselor and the doctor, we conclude that this was not testimony about the truthfulness of C.O.'s accusations of sexual assault. The counselor's testimony was about a conversation she had with C.O. after C.O. recanted her accusation of sexual assault prior to trial. On that occasion the counselor told C.O. that she did not believe the recantation. This was testimony about a conversation, not testimony about credibility.

Neither was the doctor's testimony about credibility. He described characteristics of child sexual abuse victims that he observed in C.O. and that caused him to diagnose possible sexual abuse, even though there was no evidence of any physical trauma to C.O. and no presence of semen. His testimony was that he was able to make his diagnosis because it is traumatic for a child to come to a hospital and go through the examination. Thus, when a child persists in her story, "it lends a lot of weight to the diagnosis." He mentioned that scientific studies showed this. This was testimony about the formation of his medical opinion, not testimony about C.O.'s credibility.

Marcum next claims that counsel was ineffective for not investigating C.O.'s motive to lie about the claim of sexual assault. At the postconviction hearing, recantation evidence was introduced in the form of a letter C.O. wrote to Marcum in prison saying that she had lied and asking Marcum to forgive her. In questioning her about this at the postconviction hearing, appellate counsel asked C.O. why she had previously testified that Marcum had "bad touch" with her. C.O. answered that she did this "[b]ecause [the prosecutor] said if I didn't say that my dad wouldn't come home." Marcum claims that this could have been known before trial if his attorney had interviewed C.O. If it had then been brought out at

927

trial, the jury could have evaluated the truth of C.O.'s statement and it might have affected its determination of C.O.'s versus Marcum's credibility.

■

We reject the claim. First, it is speculative at best that C.O. would have voiced a statement during a pretrial interview similar to her posttrial explanation. Second, even had the pretrial interview taken place and the statement been made, it would fly in the face of a corroborating witness. That witness testified concerning the August incident that she was a friend of C.O., that she slept over at C.O.'s house one night in August, that Marcum was lying on a couch with his robe open—revealing that he was naked—that he laid on the floor beside C.O., and that, a short time later, she saw C.O. on top of Marcum. Thus, it is doubtful that the statement would have affected the jury's determination.

■

Concerning C.O.'s recantation letter introduced at the postconviction hearing, the trial court properly noted that C.O.'s letter presented insufficient grounds for overturning Marcum's convictions and ordering a new trial. Absent other newly discovered evidence, a recantation is not sufficient reason to order a new trial. *Nicholas v. State,* 49 Wis. 2d 683, 694, 183 N.W.2d 11, 17 (1971).

We affirm Marcum's conviction on count one because we are not persuaded that there is any evidence of ineffective assistance of counsel with regard to Marcum's conviction on that count. We reverse Marcum's conviction on count six and remand to the trial court with directions to dismiss count six with prejudice.

*By the Court.*—Judgment and order affirmed in part; reversed in part and cause remanded with directions.