COURT OF APPEALS
DECISION
DATED AND FILED

February 14, 2024

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2021AP2034-CR**

STATE OF WISCONSIN

Cir. Ct. No. 2019CF3

IN COURT OF APPEALS
DISTRICT II

---

STATE OF WISCONSIN,

    PLAINTIFF-RESPONDENT,

V.

RICHARD A. FORSYTH, II,

    DEFENDANT-APPELLANT.

---

APPEAL from judgments and an order of the circuit court for Fond du Lac County: DALE L. ENGLISH, Judge. *Affirmed*.

Before Gundrum, P.J., Neubauer and Grogan, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1 PER CURIAM. Richard A. Forsyth, II appeals his judgments of conviction entered after a jury found him guilty of second-degree sexual assault and fourth-degree sexual assault, both as a repeater. He also appeals from the order denying his postconviction motion. Forsyth argues that his trial counsel was ineffective for failing to promptly review discovery, which he asserts resulted in the failure to obtain a missing document in time for trial. He also contends that his trial counsel was ineffective for failing to object to the jury instructions and verdict forms on the grounds that they were not sufficiently specific to ensure that the verdicts were unanimous. Additionally, Forsyth argues that the circuit court erred when it refused to instruct the jury on a lesser-included offense. We reject Forsyth's arguments and affirm.

¶2 The charges against Forsyth stem from a sexual assault that occurred in December 2018, reported by the victim, Catherine.[1] Catherine told police that she was dropped off at Forsyth's home after her date that night was called away on a family emergency. Catherine had been friends with Forsyth for a few years. She knew he lived nearby, and Forsyth said he could give her a ride home.

¶3 Catherine said that when she got to Forsyth's home, they sat in the living room watching television and "catching up." However, Forsyth then picked Catherine up from the couch, carried her into his bedroom, and laid her on his bed. Catherine stated that he began rubbing a pink vibrator over her pants in her vaginal area. She said Forsyth then put his hand inside her pants and her underwear, and touched her vaginal area with his fingers.

---

[1] We use a pseudonym for the victim, pursuant to WIS. STAT. RULE 809.86(4) (2021-22). All references to the Wisconsin Statutes are to the 2021-22 version unless otherwise indicated.

¶4     Catherine said that during the assault she told Forsyth to stop and that she wanted to go home. However, he kept pushing her down by the shoulders and held her down by putting his hand around her throat, so she was unable to leave. She was able to text her roommate, Shane, and asked him to pick her up from Forsyth's home. The assault ended when she told Forsyth that Shane was on his way.

¶5     Catherine began crying hysterically when she told Shane about the assault. She called the police that night to report the assault and had an examination performed by a Sexual Assault Nurse Examiner (SANE).

¶6     When the police interviewed Forsyth, he admitted to carrying Catherine to his bedroom, but he said it was because she "was tired." The officers saw the vibrator that Catherine had described near Forsyth's bed. Forsyth said that he had showed her the vibrator "as a joke," but he denied having any sexual contact with her.

¶7     Forsyth was arrested and initially charged with second-degree sexual assault and false imprisonment, as a repeater. A fourth-degree sexual assault charge, as a repeater, was later added shortly before trial.

¶8     Forsyth made a speedy trial demand on January 17, 2019. Subsequently, at a status conference on March 13, 2019, Forsyth's trial counsel advised the circuit court that the SANE exam report was missing from discovery and that the State was trying to obtain it. However, counsel stated that the report would likely not be available before the speedy trial date that was set for approximately two weeks later and that she believed that they should wait for the report before proceeding to trial.

¶9 The circuit court then engaged in a discussion with Forsyth as to whether he was comfortable proceeding with the speedy trial, in spite of his trial counsel's position that they should wait for the SANE report. Forsyth responded that he wanted to proceed with the speedy trial. The court explained that it would put his counsel at a "disadvantage" if she did not have this evidence that "potentially could help" his defense. Nevertheless, Forsyth confirmed his decision to proceed with the speedy trial.

¶10 The matter proceeded to a jury trial. Catherine testified about the assault and the events that led up to her being at Forsyth's home that night. She also stated that she and Forsyth had a consensual sexual relationship about a year before the assault and had kept in touch, primarily over Facebook. However, Catherine testified that when she texted Forsyth about getting dropped off at his home that night, she indicated that she did not want to have sex with him. Forsyth had responded that was fine, that he just wanted her "company." The text messages were introduced into evidence. Additional witnesses for the State included Shane, who testified about picking up Catherine from Forsyth's home that night, and one of the officers who had interviewed Catherine and Forsyth.

¶11 Forsyth testified in his own defense. He stated that he had told Catherine he would not be able to give her a ride home until the next day, but that she could come over to his house to "hang out" and "catch up." He said that he had picked her up from the couch as a joke because she had said she wanted to get high. He stated he then carried Catherine as he showed her around his house, including his bedroom, where he set her down on the edge of the bed. He admitted that he picked up the pink vibrator, which was next to the bed; however, he said he only made a joke about it looking like a microphone. He testified that

he never turned the vibrator on, nor did he touch Catherine with it. Indeed, Forsyth stated that he did not have "any sort of sexual contact" with Catherine.

¶12    The jury found Forsyth guilty of both sexual assault charges, but not guilty of the false imprisonment charge. The circuit court imposed a sentence of thirteen years of initial confinement followed by seven years of extended supervision for the second-degree sexual assault charge and a concurrent nine-month jail sentence for the fourth-degree sexual assault charge.

¶13    Forsyth filed a postconviction motion in May 2021. In that motion, he claimed that: (1) his trial counsel was ineffective for failing to promptly review discovery to secure the timely receipt of the SANE report and that this prejudiced him by forcing him to choose between a speedy trial and the potentially exculpatory evidence; (2) his trial counsel was ineffective for failing to object to the jury instructions and verdict forms on the grounds that they lacked specificity with regard to the sexual assault charges, which had likely led to non-unanimous verdicts; and (3) the circuit court erred when it refused to give a lesser-included jury instruction for the second-degree sexual assault charge.

¶14    A *Machner*[2] hearing was held in November 2021. With regard to the ineffective assistance claim relating to the missing SANE report, Forsyth's trial counsel testified she received discovery on January 17, 2019, and reviewed it on March 4, 2019. She said this timeframe was not unusual, due to her large caseload. She stated that she had contacted the prosecutor regarding the missing SANE report, but that it was not provided prior to trial because the State had not

---

[2] *See State v. Machner*, 92 Wis. 2d 797, 285 N.W.2d 905 (Ct. App. 1979).

received it. Counsel explained that she had discussed with Forsyth the issue of not having the SANE report for trial and that it was his decision to proceed with the speedy trial rather than wait for the report. This was corroborated through the transcript of the status conference held March 13, 2019, as described previously, as well as the transcript of a hearing held on March 22, 2019, where the State's motion to amend the information by adding the fourth-degree sexual assault charge was granted. At that time, the circuit court again confirmed with Forsyth that he still wanted to proceed with his speedy trial.

¶15    Additionally, counsel testified at the *Machner* hearing that she reviewed the SANE report after the trial and was of the opinion that it contained potentially inculpatory information with regard to the false imprisonment charge, for which Forsyth was acquitted. Specifically, counsel stated that the report included photos of injuries to Catherine's back and leg, which may have been consistent with the use of force during the assault. However, the report indicated there were no injuries to Catherine's neck to support her allegations that Forsyth had held her down by her throat.

¶16    As for Forsyth's ineffective assistance claim relating to the language of the jury instructions, trial counsel testified that her recollection was that "pretty standard language" was used, and she did not think that a "conference discussion of nonstandard language" had been held.

¶17    The circuit court rejected all of Forsyth's claims. It found that for Forsyth's first ineffective assistance claim, trial counsel was not deficient in her timing for reviewing discovery, based on the "highly deferential scrutiny of an attorney's performance and the strong presumption that counsel's performance falls within the wide range of reasonable professional assistance." In making that

6

determination, the court considered that discovery in this case was "not overly extensive" or "voluminous."

¶18    The circuit court also stated that even if counsel had performed deficiently, Forsyth failed to demonstrate he had been prejudiced by any error. The court found that the SANE report included both inculpatory and exculpatory evidence and concluded that even if the report had been received in time for trial, there was not a reasonable probability that it would have created "reasonable doubt respecting guilt." Furthermore, the court recognized that Forsyth made a "conscious decision" to go forward with the speedy trial even though the defense did not have the SANE report. The court therefore rejected Forsyth's ineffective assistance claim on the issue of the SANE report.

¶19    The circuit court also rejected Forsyth's other ineffective assistance claim relating to the specificity of the jury instructions and the possibility that the verdicts were not unanimous. The court pointed out that the instructions were clear that the jury was required to make separate findings for each count. The court further stated that the evidence was clear that the second-degree sexual assault charge related to Forsyth putting his hand inside Catherine's pants, while the fourth-degree charge was his using the vibrator on the outside of her pants. The court therefore concluded that there was no unanimity issue, and thus Forsyth's ineffective assistance claim relating to this issue failed.

¶20    Regarding Forsyth's claim that the circuit court erred in not providing an instruction for a lesser-included charge on the second-degree sexual assault count, the court stood by its analysis presented during the jury instruction conference. Under that analysis, the court had to consider whether the evidence would support an acquittal under the greater charge and a conviction under the

lesser charge. The court reviewed the evidence that was presented—Catherine's version of events that Forsyth used force to hold her down during the assault and Forsyth's version that he had no sexual contact with Catherine whatsoever—and concluded that the evidence did not support giving the lesser-included instruction where the use of force was not an element.

¶21 Therefore, the circuit court denied Forsyth's motion in its entirety. This appeal follows.

¶22 Forsyth renews his postconviction claims on appeal. Beginning with his ineffective assistance of counsel claims, in order to establish these claims, Forsyth must show both that counsel's performance was deficient and that such performance prejudiced the defense. *See Strickland v. Washington*, 466 U.S. 668, 687 (1984). We need not address both components of the analysis if Forsyth fails to make a sufficient showing on either one. *See id.* at 697.

¶23 Appellate review of an ineffective assistance of counsel claim is a mixed question of fact and law. *State v. Pitsch*, 124 Wis. 2d 628, 633-34, 369 N.W.2d 711 (1985). We will not disturb the circuit court's findings of fact unless they are clearly erroneous, but the ultimate determination of whether counsel's performance fell below the constitutional minimum is a question of law we review independently. *See id.* at 634.

¶24 Regarding Forsyth's first ineffective assistance claim relating to the timeliness of his trial counsel's review of discovery and failure to procure the SANE report in time for trial, we conclude that Forsyth waived this argument when he affirmatively chose to proceed with a speedy trial instead of waiting for the report. *See State v. Krancki*, 2014 WI App 80, ¶11, 355 Wis. 2d 503, 851 N.W.2d 824 (citation omitted) ("If a defendant selects a course of action, that

defendant will not be heard later to allege error or defects precipitated by such action. Such an election constitutes waiver or abandonment of the right to complain."). Here, Forsyth confirmed several times that he wanted to proceed with the speedy trial, with the full knowledge that the SANE report was not going to be available in time, and despite his counsel's opinion to the contrary. In fact, during discussions with the circuit court about this issue, Forsyth pointed out that although the absence of the report meant that his counsel would not be able to utilize any exculpatory evidence it may contain, the State would likewise not be able to use any inculpatory evidence in the report.

¶25 Forsyth argues that he would not have had to make that choice had his trial counsel not been deficient in failing to timely review discovery, bringing to light the missing SANE report earlier. Even if this were to be deemed deficient performance—which we are not concluding here—Forsyth fails to demonstrate that he suffered prejudice as a result. To demonstrate prejudice, the defendant must show that there is "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694.

¶26 Forsyth argues that the SANE report could have been used to impeach Catherine on inconsistent statements. For example, the SANE report showed that Catherine had an injury on her back, which she told the nurse may have occurred when Forsyth "pushed [her] into the headboard" of the bed at one point during the assault. Forsyth contends that this is contrary to Catherine's claim that Forsyth had laid her down on the bed. However, it is not necessarily inconsistent to be pushed against the headboard *and* forced down on your back during an assault.

¶27 Forsyth contends there was another inconsistency in Catherine's testimony because the SANE report indicated that Catherine said she had "yelled" at Forsyth to stop, but she did not testify at trial that she had yelled. He further argues that his roommates, who were at Forsyth's home in their bedrooms at the time of the assault, did not hear a disturbance. However, Forsyth's roommates never testified at trial; in fact, Catherine testified that they were intoxicated and "passed out" in their bedrooms. Furthermore, Catherine's testimony did not include any questions regarding the volume of her voice. In any event, Catherine testified that she repeatedly told Forsyth "no" throughout the assault, which is corroborated in the SANE report.

¶28 Prejudice is not established "by simply showing that an error had some conceivable effect on the outcome." *State v. Koller*, 2001 WI App 253, ¶9, 248 Wis. 2d 259, 635 N.W.2d 838. Rather, the defendant must demonstrate that "counsel's alleged errors actually had some adverse effect on the defense." *Id.* Forsyth has not shown that the introduction of the SANE report, with its exculpatory and inculpatory evidence, would have had an actual effect on the outcome here. Forsyth does not address the potential effects of the inculpatory evidence of the SANE report. Furthermore, in addition to hearing Catherine's version of the incident, the jury also heard the testimony of Catherine's roommate Shane and the investigating police officer. Moreover, the jury was able to assess Forsyth's version of events through his testimony, which included the admission that he had previously been convicted of crimes eleven times. Therefore, Forsyth has not established that there is a reasonable probability that having the SANE report for the trial would have affected its outcome. *See Strickland*, 466 U.S. at 694. As a result, his ineffective assistance of counsel claim on this issue fails. *See id.* at 697.

¶29    Forsyth's other ineffective assistance of counsel claim, relating to the specificity of the jury instructions and verdict forms, fails as well because we conclude that there is no unanimity issue. Forsyth cites *State v. Marcum*, 166 Wis. 2d 908, 480 N.W.2d 545 (Ct. App. 1992), in support of his argument. In *Marcum*, the defendant was charged with six counts of sexual assault of a child younger than thirteen years old. *Id.* at 913. Three of those counts were based on assaults that occurred during the same month, but with different types of sexual contact. *Id.* However, the verdict forms for those three counts were worded identically. *Id.* at 915. Furthermore, the evidence presented to the jury regarding the number of incidents and the types of contact that occurred during each incident was unclear, inconsistent, and confusing. *See id.* at 913-14. Therefore, this court reversed one of the defendant's sexual assault convictions "because the verdict was so unspecific as to violate Marcum's sixth amendment right to a unanimous verdict and his fifth amendment due process right to verdict specificity." *Id.* at 912.

¶30    That is not the case here. The counts against Forsyth are not identical, as in *Marcum*, but rather were different charges: the second-degree sexual assault charge relating to Forsyth putting his hand inside Catherine's pants to touch her vagina, which included the additional element of using force; and the fourth-degree sexual assault charge for Forsyth's use of the vibrator on the outside of her pants. The circuit court instructed the jury that each charge was a separate crime and that they had to be considered separately. Furthermore, the record reflects that this was clearly explained to the jury by the State during its closing argument. Therefore, there is no basis for arguing that a unanimity issue existed with the jury instructions and verdict forms. *See State v. Tulley*, 2001 WI App 236, ¶17, 248 Wis. 2d 505, 635 N.W.2d 807. As a result, Forsyth has not

demonstrated that his trial counsel was deficient for failing to object to them. *See id.*; *State v. Wheat*, 2002 WI App 153, ¶14, 256 Wis. 2d 270, 647 N.W.2d 441 ("Failure to raise an issue of law is not deficient performance if the legal issue is later determined to be without merit.").

¶31  Finally, we turn to Forsyth's argument that the circuit court erred in refusing to give a lesser-included jury instruction for the second-degree sexual assault charge. Making this determination involves a two-step process by the circuit court: (1) ascertain whether, as a matter of law, the crime is a lesser-included offense; and (2) determine "whether there is a reasonable basis in the evidence for an acquittal on the greater charge and for a conviction on the lesser charge." *State v. Muentner*, 138 Wis. 2d 374, 387, 406 N.W.2d 415 (1987). "It is error for a court to refuse to instruct on an issue which is raised by the evidence." *State v. Weeks*, 165 Wis. 2d 200, 208, 477 N.W.2d 642 (Ct. App. 1991) (citation omitted). We review *de novo* whether a jury instruction on a lesser-included offense should have been given. *State v. Jones*, 228 Wis. 2d 593, 598, 598 N.W.2d 259 (Ct. App. 1999).

¶32  We conclude that there was no basis in the evidence to support giving the lesser-included jury instruction for the second-degree sexual assault charge. The record reflects that the primary evidence on this issue was Catherine's testimony that Forsyth used force while putting his hand down her pants and touching her vaginal area and Forsyth's testimony that he did not have any sexual contact with Catherine. There was no evidence of this assault occurring without the use of force. In other words, the evidence does not support giving the lesser-included instruction where the use of force was not an element. Therefore, the circuit court did not err by refusing to give the lesser-included instruction. *See Weeks*, 165 Wis. 2d at 208.

¶33    Accordingly, because all of Forsyth's claims fail, we affirm the judgments of conviction and the order denying his postconviction motion.

*By the Court.*—Judgments and order affirmed.

This opinion will not be published.    *See* WIS. STAT. RULE 809.23(1)(b)5.