COURT OF APPEALS
DECISION
DATED AND FILED

April 22, 2025

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No.    **2024AP1280**

**STATE OF WISCONSIN**

Cir. Ct. No. 2023TP1

**IN COURT OF APPEALS
DISTRICT I**

IN RE THE TERMINATION OF PARENTAL RIGHTS TO N.H., A PERSON UNDER THE AGE OF 18:

STATE OF WISCONSIN,

      PETITIONER-RESPONDENT,

  V.

T.N.,

      DEFENDANT-APPELLANT.

        APPEAL from an order of the circuit court for Milwaukee County: JOSEPH R. WALL, Judge. *Affirmed*.

¶1    WHITE, C.J.[1] T.N. appeals from the order of the circuit court terminating her parental rights to her son, N.H.  T.N. argues that she received ineffective assistance of counsel when her attorney did not object to certain statements that she argues are inadmissible hearsay.  For the reasons below, we affirm.

BACKGROUND

¶2    T.N. is the mother of N.H., born in May of 2016.  N.H. was removed from T.N.'s care pursuant to a child in need of protection or services ("CHIPS") petition in May 2021.  The petition was brought following an incident in which N.H. was left home alone and started a fire while attempting to use the toaster.

¶3    In January 2023, a termination of parental rights ("TPR") petition was filed to terminate T.N.'s parental rights as to N.H.  As grounds, the petition alleged continuing CHIPS and that T.N. had failed to assume parental responsibility for N.H.

¶4    A bench trial was held during the grounds stage of the proceedings beginning August 21, 2023.  During the trial, the court heard testimony from a host of witnesses, including caseworkers, family support specialists, mental health professionals, and N.H.'s foster mother.  Based on the testimony provided, the trial court ultimately concluded that sufficient grounds existed to terminate T.N.'s parental rights.  In doing so, the court discussed each of the witnesses who had testified and analyzed the substance of their testimony and their credibility.  As it

---

[1] This appeal is decided by one judge pursuant to WIS. STAT. § 752.31(2)(e) (2023-24). All references to the Wisconsin Statutes are to the 2023-24 version unless otherwise noted.

particularly related to the continuing CHIPS grounds, the court discussed the conditions[2] that had been put in place by the original CHIPS order, and found that T.N. had failed to satisfy those conditions within the requisite time frame (despite her assertions to the contrary). The court noted that T.N. had done *some* of the work toward satisfying the conditions, but had not totally met them, and thus found that the State had met its burden of proof in that regard.

¶5      As it related to the failure to assume parental responsibility grounds, the trial court acknowledged that T.N. very obviously loved and cared for N.H. However, the court also stated that it had not always found T.N.'s testimony to be credible. The court looked at N.H.'s psychological evaluation and noted the diagnoses of reactive attachment disorder ("RAD") and post-traumatic stress disorder ("PTSD"), which resulted from insufficient care and/or significant fear or violence in N.H.'s early life. The court stated,

> So based on the diagnoses that [N.H.] has, and especially the reactive attachment disorder and the post-traumatic stress disorder, and based on things that [N.H.] has said to others about his time with his mother and … the things that he says when acting out. … I do find that [T.N.] has failed to assume parental responsibility for [N.H.].

The court ultimately found that sufficient grounds existed to terminate T.N.'s parental rights and set the case over for a dispositional hearing.

---

[2] The specific conditions included: (1) control your drug or alcohol use; (2) understand how your drug or alcohol use affects your child; (3) control your mental health; (4) commit no crimes; (5) resolve your criminal cases; (6) do not allow violence in your home or in front of your children; (7) always supervise your child and place your child's needs before your own; (8) always have age appropriate expectations of your child; (9) keep a safe clean home; (10) meet your child's special needs; (11) meet your child's medical needs; (12) meet your child's educational needs; and (13) control your emotions. Other, all-parent conditions included providing safe care for the child and visiting the child regularly.

¶6 At the dispositional hearing, the trial court ultimately concluded that it was in N.H.'s best interests for T.N.'s parental rights to be terminated, and that N.H. be adopted by his foster mother. The court noted that it was highly likely that the foster mother would adopt N.H. if the termination order was entered, and that it was clear that N.H. wanted to remain with his foster mother despite the fact that he may have at one point had a substantial relationship with T.N. The court also considered the fact that the period of time since N.H. had been removed from the home had been substantial, and that if N.H. was returned to T.N.'s home it was likely that T.N. would continue to struggle with insight into her own mental health needs, to N.H.'s detriment.

¶7 T.N. subsequently filed a postdisposition motion arguing that her trial counsel had been ineffective, and that the court's order should therefore be vacated. In particular, T.N. asserted that trial counsel had failed to object on hearsay grounds to the testimony of three witnesses who described statements N.H. had made to them about how T.N. had treated him when he lived with her, including: (1) the testimony of a family support specialist who testified that, during a supervised visit between N.H. and T.N., N.H. was "screaming and crying a lot, and he stated that he—to his mom—to [T.N.] that she hates him and that he wanted to kill himself"; (2) the testimony of N.H.'s foster mother, in which she testified that N.H. had told her that his mother "calls me dumb. She doesn't listen to me. She would whoop me"; and (3) the testimony of a child welfare case manager who she testified that she had heard N.H. state that he wanted to die and that T.N. had used a belt "to hit me on my back and my butt."

¶8 An evidentiary hearing on the postdisposition motion was held on November 19, 2024. T.N.'s trial counsel testified during the hearing that he chose not to object to the identified statements because he did not believe that they were

being offered for the truth of the matter asserted; rather, he believed that they were brought up in the context of explaining the reasons why T.N. had failed to satisfy the conditions for reunification pursuant to the CHIPS order.

¶9    In a written decision, the trial court held that trial counsel had not been ineffective.  The court stated that it did not believe that the identified statements would have been inadmissible, because the residual hearsay exception could be extended to allow them into evidence.  In addition, the court stated that, even if the statements *were* inadmissible hearsay, and trial counsel *had* objected to them, and the court *had* sustained the objections, "the remaining evidence in the case was more than sufficient to sustain [the] verdicts on the two grounds alleged in the petition." T.N. appeals.

**STANDARD OF REVIEW**

¶10    A parent's right to counsel in a termination action includes the right to effective assistance of counsel.  ***State v. A.S.***, 168 Wis. 2d 995, 1004-05, 485 N.W.2d 52 (1992).  The test for assessing whether a parent received ineffective assistance of counsel is the same as in a criminal case.  ***Id.*** at 1005 (*citing* ***Strickland v. Washington***, 466 U.S. 668 (1984)).  Thus, the parent alleging ineffective assistance of counsel must show that trial counsel's performance was both deficient and prejudicial.  ***Strickland***, 466 U.S. at 697.  A court need not address both aspects of this test if a litigant has failed to make a sufficient showing on either one.  ***Id.***

¶11    On review, an ineffective assistance of counsel claim presents a mixed question of fact and law.  ***State v. Pico***, 2018 WI 66, ¶13, 382 Wis. 2d 273, 914 N.W.2d 95.  The trial court's factual findings will be upheld unless clearly erroneous, but this court independently reviews whether those facts amount to ineffective assistance of counsel as a matter of law.  ***Id.***  "An appellate court

5

independently determines whether those historical facts demonstrate that defense counsel's performance met the constitutional standard for ineffective assistance of counsel, benefitting from the analyses of the [trial] court[.]" *State v. Dillard*, 2014 WI 123, ¶86, 358 Wis. 2d 543, 859 N.W.2d 44.

¶12    Counsel's performance is deficient if it falls below an objective standard of reasonableness. *State v. Marcum*, 166 Wis. 2d 908, 917, 480 N.W.2d 545 (Ct. App. 1992). The test for deficient performance is objective, asking whether "[u]nder the totality of the circumstances, did trial counsel's performance fall 'outside the wide range of professionally competent assistance[.]'" *Dillard*, 358 Wis. 2d at ¶88. Generally, judicial scrutiny of an attorney's performance should be highly deferential. *Id.* Prejudice is proven where "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694.

## DISCUSSION

¶13    T.N. insists that her trial counsel was deficient because he failed to object to N.H.'s statements introduced through inadmissible hearsay statements. T.N. argues that these statements were indisputably hearsay and that they therefore could not have been introduced for the truth of the matter asserted.

¶14    T.N. spends much of her argument focusing on whether the at-issue statements could possibly fall under any of the identified hearsay exceptions. However, this court chooses not to give these arguments much consideration, because—regardless of whether the statements may fall under any of the hearsay exceptions—T.N. has not sufficiently shown that she was prejudiced by trial counsel's allegedly deficient performance. In order to succeed on an ineffective

6

assistance claim, one must be able to show *both* that counsel's performance was deficient *and* that prejudice occurred as a result. ***Strickland***, 466 U.S. at 697.

¶15     T.N. cannot show that she was prejudiced by trial counsel's allegedly deficient performance.  She argues that the trial court clearly relied upon the arguably inadmissible hearsay statements in concluding that sufficient grounds existed to terminate her parental rights.  This argument is correct: the trial court itself acknowledged that it had relied upon these statements when it made its decision.

¶16     However, in looking at the totality of the evidence that the trial court considered at the grounds stage of the trial, it is clear that—even absent the arguably inadmissible hearsay statements—there was sufficient evidence to support the court's termination of T.N.'s parental rights.

¶17     In considering whether the State had met its burden in demonstrating that that the continuing CHIPS ground for the TPR existed, the trial court noted that T.N. had failed to meet a number of the conditions necessary for N.H. to return to the home.  The court relied on testimony from a number of witnesses which indicated that T.N. did not fully understand or appreciate N.H.'s mental, emotional, or medical needs, including that T.N. had repeatedly denied that N.H. needed increased support at school and had continually failed to take responsibility for her part in influencing N.H.'s behavior.  In addition, the court relied on testimony that T.N. had not complied with her own providers' medication recommendations and had failed to recognize or take responsibility for her own mental health needs

¶18     In considering whether T.N. had failed to assume parental responsibility for N.H., the trial court relied primarily upon N.H.'s mental health diagnoses of RAD and PTSD.  While the court acknowledged that there was

evidence that suggested that N.H. and T.N. had a very loving relationship, it also noted that there was substantial evidence in N.H.'s psychological evaluation which pointed to significant abuse and instability in the home. The court stated:

> So based on the diagnoses that [N.H.] has, and especially the reactive attachment disorder and the post-traumatic stress disorder, and based on things that [N.H.] has said to others about his time with his mother and … the things he says when acting out. I think the guardian [ad litem] pointed out very well that a five-year-old should not be talking about killing himself… . I do find that [T.N.] has failed to assume parental responsibility[.]

¶19     Thus, while it is undisputed that the court did consider the allegedly inadmissible statements when it found that there were sufficient grounds to terminate T.N.'s parental rights, it also considered a wealth of other evidence and testimony from those involved in N.H.'s care.

¶20     When considering the totality of the testimony and evidence considered by the trial court during the grounds stage of the trial, it is clear that T.N. cannot show prejudice sufficient to undermine the outcome of the case. Even assuming without deciding that the court relied upon inadmissible hearsay, there was ample evidence in the record sufficient to sustain the court's findings. Because of this, T.N. cannot satisfy the second prong of the *Strickland* test, and therefore the trial court did not err in finding that T.N. had not received ineffective assistance of counsel.

## CONCLUSION

¶21     For the reasons stated above, we conclude that T.N. did not receive ineffective assistance of counsel. Accordingly, we affirm the circuit court's order terminating T.N.'s parental rights over N.H.

*By the Court.*—Order affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)4.